IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **05 - N - 153 (MJW)**

DAVID HABECKER,

    Plaintiff,

v.

TOWN OF ESTES PARK, COLORADO;
BOARD OF TRUSTEES OF THE TOWN OF ESTES PARK, COLORADO;
JOHN BAUDEK, MAYOR OF THE TOWN OF ESTES PARK, COLORADO;
VICKIE O'CONNOR, TOWN CLERK OF THE TOWN OF ESTES PARK, COLORADO;
DEWEY SHANKS, MEMBER, PETITIONER'S COMMITTEE TO RECALL HABECKER;
NORMAN D. PRITCHARD, MEMBER, PETITIONER'S COMMITTEE TO RECALL HABECKER;
and
RICHARD H. CLARK, MEMBER, PETITIONER'S COMMITTEE TO RECALL HABECKER,

    Defendants.

---

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

### I. FACTS

1. David Habecker, Plaintiff, is a 59 year-old resident of the Town of Estes Park, Colorado. He is married and has two adult children. Habecker and his wife have lived in Estes Park since 1977. Habecker was brought up as a Presbyterian and has served as an elder in a Presbyterian church and a trustee in a Methodist Church. He now considers himself to be an agnostic. His son is also an agnostic and his daughter is a Jehovah's Witness.

2. Habecker has a successful building design practice in Estes Park. He is a highly respected member of the community and has been involved in many community activities.

3. In 1984, Habecker was first elected to a four-year term to the office of Trustee of the Town of Estes Park. He was re-elected to another four-year term in 1988. In 2000, he was elected to fill the vacancy of a deceased Trustee, and he was elected to another four-year term in 2002. His present term expires in April, 2006.

4. There are six Town Trustees, plus the Mayor, which form the Board of Trustees. The Mayor is an *ex officio* member of the Board and is allowed to vote only in the case of ties. The Board of Trustees functions much like a corporation's board of directors; it establishes budgets, appropriates funds, hires and fires key employees, and sets policy for the Town.

5. The Board conducts formal meetings twice a month, and it is the duty of each Trustee to attend meetings. Meetings are open to the public. At the May 11, 2004 meeting, the Mayor announced a new policy of formally opening meetings with the pledge of allegiance. Habecker was completely taken by surprise. He rose and recited the pledge omitting the phrase "under God".

6. During the course of the next several meetings, Habecker became more and more uncomfortable with the ritual. He is opposed to the phrase "under God" not only because it violates his religious convictions, but also because he conscientiously believes the phrase is at odds with our Constitutional system of secular government. He therefore decided to stay seated and refrain from saying the pledge. Habecker showed no disrespect. He simply sat passively until the pledge had been recited.

7. Lori Jeffrey-Clark is a Town Trustee. She observed Habecker declining to rise and recite the pledge at the September 14, 2004 Board meeting. At the next meeting on September 28, she put enlarged copies of currency before each Trustee's place on the bench to point out the "In God We

Trust" motto. She also invited a group of Webelo Scouts to attend the meeting. When Habecker stayed seated and refrained from saying the pledge, Ms. Jeffrey-Clark then spoke out, accusing Habecker of being unpatriotic and stated "I want my vote back". Since then, both Habecker and his business have been threatened by those who disagree with his position.

8. Defendants Shanks, Pritchard, and Clark formed a committee to recall Habecker. Their petition reads as follows:

"Electors suffer loss of confidence in Mr. Habecker's ability to represent citizen's pride, patriotism, and common decency. Prior to Town Board of Trustees meetings, he purposefully and irreverently chooses to publicly sit, facing away from the flag of the United States, during recital of the Pledge of Allegiance. His defiant behavior occurs because the phrase "...under God..." offends him. He states he intends to continue until the United States Congress strikes the phrase from the Pledge of Allegiance.

Habecker failed to reveal this violation of his principles during campaigns for election. We consider this omission a deliberate tactic to assure voter ballots towards his election. We consider this tactic unethical and unacceptable.

We respect Mr. Habecker's right to free speech under the Constitution of the United States, but insist on maintenance of responsibility, accountability, leadership, respect for others, and high standards of public conduct. His vital beliefs regarding church/state personal conflicts were not revealed at the critical time of election. We do not regard these actions, omissions or motivations honorable, and demand his

removal from his elected position."[1]

9. The Petition was determined to comply with applicable legal requirements and February 15, 2005 was scheduled as the date for the recall election.

10. The recall election is governed by the provisions of Colorado Revised Statutes §1-12-101 *et. seq.* Ms. Vickie O'Connor, the Town Clerk, is responsible for conducting the election.

## II. ARGUMENT

11. The requirements for issuance of a preliminary injunction are (1) a substantial likelihood that the moving party will prevail on the merits, (2) that the moving party will suffer irreparable harm if the injunction does not issue, (3) that the moving party's injury outweighs any damage to the non-moving party or parties, and (4) and that the issuance of an injunction is not adverse to the public interest. *City of Chanute v. Kansas Gas and Elec. Co.*, 754 F.2d 310, 314 (10th Cir. 1985). Where the last three requirements for a preliminary injunction have been met, the Tenth Circuit has adopted a modified likelihood of success standard which requires only that the moving party show a "fair ground" for litigation. *Id.*, at 314. See also *Walmer v. U.S. Dept. of Defense*, 52 F.3d 851, 854 (10th Cir. 1995), *cert. den.* 516 U.S. 974 (1995), and *Albright v. Board of Educ. of Granite School Dist.*, 765 F. Supp. 682, 686 (D. Utah 1991).

### A. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

12. This motion confronts the Court with the question of whether a state law intended to

---

[1] Habecker categorically denies that he faced away from the flag or engaged in any conduct of an "irreverent" nature. He also denies withholding his views on the pledge of allegiance during his campaign for election in 2002. The pledge was not an issue in 2002. It only became an issue when it was decided to begin meetings with the pledge on May 11, 2004.

forbid inquiry into the reason for the recall of a public official trumps the United States Constitution. At risk is whether public officials will be afraid to exercise their First Amendment rights and, instead, indulge in hypocrisy for fear of being ousted from office.

13. Colorado Revised Statutes 1-12-101, *et seq.* applies to the recall at issue. Section 1-12-103 reads, in pertinent part, "...the electors...shall be the sole and exclusive judges of the legality, reasonableness, and sufficiency of the ground or grounds assigned for the recall. The ground or grounds shall not be open to review." On the face of it, this law would appear to foreclose judicial review of a recall no matter how discriminatory or arbitrary the reasons for the recall might be. It would seem to empower a majority of electors to be the only arbiters as to who is allowed to remain in office and who is not. The judiciary is simply left out. See, *e.g., Bernzen v. The City of Boulder*, 525 P.2d 416 (S.Ct. Colo. 1974); See also *Gordon v. Leatherman*, 450 F2d 562 (5th Cir. 1971).

14. Any reasoning which might support the proposition that recalls in Colorado should be exempt from judicial scrutiny does not apply here. This is not a case where a public official is being recalled for speaking out voluntarily. The circumstances here show that Habecker was in a captive situation. He had a duty to attend Board meetings and was therefore *compelled* to make the choice of declining to say the pledge of allegiance or swallow his religious and political convictions and indulge in the hypocrisy of reciting it. The only way he could have escaped his predicament was to absent himself from Board meetings, a choice which would not only have been inconsistent with his responsibilities as a Town Trustee, but also one he should not have been required to make.

15. The issue of whether one is in a coercive situation was analyzed in detail in *Lee v. Weisman*, 505 U.S. 577 (1992). There the Court dealt with the contention that, because attendance

at public high school graduation is voluntary, the Plaintiff, a graduating student, could have avoided a religious benediction to which the student objected merely by not attending the commencement. The Court responded by stating that "The argument lacks all persuasion. Law reaches past formalism. And to say a teenager has a real choice not to attend her high school graduation is formalistic in the extreme. True, (plaintiff) could elect not to attend her commencement without renouncing her diploma; but we shall not allow the case to turn on this point." *Id.* at 595. The same logic was applied to enjoin a student-led prayer at an inter-scholastic football game. The objecting student there could have opted to avoid the prayer simply by not attending the game. However, the Court held that student participation at sporting events is part of the school experience, and it would be unreasonable to force a student to make such a choice. *Santa Fe Ind. School Dist. v. Doe,* 530 U.S. 290 (2000).

16. *Lee v. Weisman, Santa Fe Ind. School Dist.,* and allied cases are not limited to public school situations. They stand more broadly for the proposition that "...government may not coerce *anyone* to support or participate in religion or its exercise..." *Lee v. Weisman,* 505 U.S. 587, and that absenting oneself from obligatory or merely customary activities is no solution to this dilemma. These principles apply here. By virtue of the necessities of his office, Habecker was left with no choice but to be present during recitation of the pledge

17. Over sixty years ago, the U.S. Supreme Court, in *West Virginia Bd. of Ed. v. Barnette,* 319 U.S. 624 (1943), addressed the constitutionality of a state law which imposed penalties,

6

including expulsion, for any student who refused to join in reciting the pledge of allegiance[2]. In voiding that law, the Court specifically overruled a prior decision which held that it was better left to fight the issue out "...in the forum of public opinion..." *Id.* at 638, commenting on *Minersville School Dist. v. Gobitis,* 310 U.S. 586, 597, 598, 600 (1940). Instead, the Court clearly laid out ground rules applicable to the case at bar. It stated that "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of the majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights *may not be submitted to vote; they depend on the outcome of no elections.*" *Id.* at 639 (Emphasis supplied.) The application of these principles to the case at bar leads to the inescapable conclusion that the Colorado recall statute is unconstitutional and that the recall must be stopped.

18. The pledge of allegiance has obvious religious connotations; it is an oath to a nation "under God". It is not necessary, however, for purposes of this motion to argue the constitutionality *per se* of the pledge. It is sufficient to say that Habecker's objection to reciting the pledge was based principally on religious grounds which have constitutional implications. The First Amendment has consistently been interpreted to guarantee the right to free exercise of "...any religious faith or none at all." *Wallace v. Jaffree,* 472 U.S. 38, 53 (1985). Accordingly, Habecker's agnosticism which prevents him from reciting the pledge is clearly within the protective ambit of the "free exercise"

---

[2] At that time the pledge did not contain the phrase "under God". That phrase was added during the Joseph R. McCarthy era and became federal law in 1954, 68 Stat. 249 (1954).

clause.  To subject him to loss of his public office for availing himself of this Constitutional right is tantamount to denial of that right.  If the Colorado recall statute is to be construed as not allowing *any* judicial inquiry into a recall under the circumstances of this case, it is fatally defective.

19.  There is a further basis for stopping the recall.  Article Six of the United States Constitution provides that "...no religious test shall ever be required as a qualification to any office or public trust under the United States."  The question here is whether the Due Process Clause of the Fourteenth Amendment imposes Article Six on the states in the same manner as it does the Bill of Rights.

20.  In *Wolf v. Colorado*, 338 U.S. 25, 26-27 (1949), Justice Frankfurter analyzed the issue in considerable detail.  He cited with approval Justice Cardozo's opinion in *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), which rejected the suggestion that the Due Process Clause is limited to transferring only the Bill of Rights to the states.  The Cardozo Court, said Frankfurter, saw "...a different but deeper and more pervasive conception of the Due Process Clause." *Wolf v. Colorado*, 338 U.S. 27.   Justice Frankfurter went on to say that "Due process of law thus conveys neither formal nor fixed nor narrow requirements.  It is the compendious expression for all those rights which the courts must enforce because they are basic to our free society." *Id. at* 27.

21.  *Wolf* was later overruled by *Mapp v. Ohio*, 367 U.S. 643 (1961), but not because the Court wished to limit the application of the Due Process Clause.  To the contrary, the Court significantly expanded the Clause's coverage.  It applied to the states the federal exclusionary rule for evidence obtained through an illegal search and seizure, a step it had refused to take in *Wolf.*

8

This was a resounding affirmation of Justice Frankfurter's analysis of the Due Process Clause in *Wolf*.

22. In *Torcaso v. Watkins*, 367 U.S. 488 (1961), the Court held that the State of Maryland could not exact a religious oath as a condition for becoming a notary public. An argument was made in that case that the oath also violated Article Six of the U.S. Constitution because it amounted to a religious test for public office. In declining to rule on this issue the Court stated "Because we are reversing the judgment on other grounds, we find it unnecessary to consider appellant's contention that this provision applies to state as well as federal offices." *Id.* at 495.

23. Nevertheless, the Court in *Torcaso* characterized test oaths as intolerant. It noted that Article Six of the Constitution was designed specifically to prohibit religious tests and oaths because they are "abhorrent to our tradition." *Torcaso*, 367 U.S. at 491. The Court then explained that the Bill of Rights carried this principle further by outlawing religious establishments and guaranteeing religious freedom for ordinary citizens, not just public office-holders. It saw a very close connection between the First Amendment and Article Six which serves to support the proposition that the Due Process Clause imposes both provisions on the individual states. It follows that, subjecting Habecker to ouster solely for declining to recite the pledge of allegiance at official meetings of the Board of Trustees is punishment for failing a religious test in clear violation of the Constitution. Therefore, the Court should intervene and prevent the recall.[3]

---

[3] This recall also violates Article II, Section 4 of the Colorado Constitution in that it denies Habecker political rights and privileges to which he is entitled and discriminates against Habecker on account of his opinions concerning religion. However, because of the clear violations of the United States Constitution which entitle Habecker to relief, there is no need to present extensive argument on issues concerning the State Constitution.

9

24. This is not an isolated case. It is alien to our freedoms to subject the constitutional rights of any citizen to popular vote. If the Court does not step in and stop the recall, it can anticipate a rash of similar situations orchestrated by those who hold nonbelievers in contempt.[4] This will lead to widespread discrimination either by forcing nonbelievers out of public office or pushing them into a closet.

25. Habecker took an oath when sworn into office to support the U.S. Constitution, the Colorado Constitution, and the ordinances of Estes Park Township. He should not be asked, much less compelled, to voice any further oaths, particularly an oath to a divinity at the risk of being ostracized.

### B. IRREPARABLE INJURY

26. Habecker will be irreparably injured absent injunctive relief. If the recall is allowed to proceed and Habecker is replaced, he will have lost his public office for what the Court may ultimately find was an unconstitutional reason. Even if he wins the recall, Habecker will be forced to deal with the same dilemma of whether to recite the pledge or remain silent. Furthermore, he will continue to be forced into the awkward position of being the lone holdout and be subjected to the danger of bodily harm by fanatics who fail to grasp the true meaning of our freedoms.

### C. BALANCE OF HARM

27. The grant of a preliminary injunction will cause no harm. There is no allegation that Habecker lacks competence or is derelict in his duty as a Trustee. To the contrary, he has performed

---

[4] According to the ZOGBY/REUTERS INTERNATIONAL POLL (August 13, 2002), there is a growing climate of intolerance in the United States toward atheists and nonbelievers.

10

his duties conscientiously and capably, as evidenced by his winning election four times. His continued participation as a member of the Board of Trustees pending the outcome of this case will not harm the Town of Estes Park or its citizens.

### D. THE PUBLIC INTEREST

28. The vindication of constitutional rights is always in the public interest. *Albright v. Board of Educ. of Granite School Dist.*, 765 F. Supp. 682 (D. Utah 1991).

### III. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests the Court to issue an immediate order enjoining the Defendants from (1) conducting an election to recall David Habecker as a Town Trustee of the town of Estes Park, Colorado and (2) including the pledge of allegiance as part of the official business at meetings of the Town's Board of Trustees.

Respectfully submitted,

Robert R. Tiernan
Attorney for the Plaintiff
3165 S. Waxberry Way
Denver, CO 80231
(303) 671-2490
Fax: (303) 743-7810

11