FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2005 MAR -1  PM 12: 29

GREGORY C. LANGHAM
CLERK

BY _____ DEP. CLK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 05-N-153 (MJW)

DAVID HABECKER,

     Plaintiff,

v.

TOWN OF ESTES PARK, COLORADO;
BOARD OF TRUSTEES OF THE TOWN OF ESTES PARK, COLORADO;
JOHN BAUDEK, MAYOR OF THE TOWN OF ESTES PARK, COLORADO;
VICKIE O'CONNOR, TOWN CLERK OF THE TOWN OF ESTES PARK, COLORADO;
DEWEY SHANKS, MEMBER, PETITIONER'S COMMITTEE TO RECALL HABECKER;
NORMAN D. PRITCHARD, MEMBER, PETITIONER'S COMMITTEE TO RECALL HABECKER; and
RICHARD H. CLARK, MEMBER, PETITIONER'S COMMITTEE TO RECALL HABECKER,

     Defendants.

---

## SUPPLEMENTAL BRIEF OF PLAINTIFF

---

COMES NOW the Plaintiff, by and through his undersigned attorney, and submits the following supplemental brief.

## INTRODUCTORY STATEMENT

This is a unique case. It involves a direct assault on one of the core principles of our democracy – religious freedom. Defendants Clark and Pritchard[1] (hereinafter the "Recall Committee") want to punish a public official merely for exercising this constitutional right. The Plaintiff was confronted with a dilemma not of his own making – indeed, a Hobson's choice –

---

[1] Defendant Dewey Shanks is the third member of the Recall Committee but he has not entered an appearance in this case nor has he filed an Answer.

either recite the pledge of allegiance or sit silently through it. He was forced to make that choice because the pledge was recited at an official meeting requiring his presence. Plaintiff could have engaged in the hypocrisy of pledging allegiance to a God he does not believe in or stayed true to his deepest convictions and refrained. He chose the latter.

Public officials have just as much right to enjoy the freedoms of this democracy as other citizens. The Plaintiff meant no insult to those who believe in God or that this is a nation under God. He would never excoriate others for fervently following their beliefs even if he thought they were fanciful or even irrational. There is no magic potion that reveals the mysteries of the universe which is precisely why the authors of our Constitution took great pains to insure full and unqualified protection for differing belief systems. The attempt to recall Plaintiff is the antithesis of this great work.

The Recall Committee wants to use the recall process to force this nonconformist to pay the price for not taking an oath that he, in good conscience, cannot take. This is reminiscent of the McCarthy era when congressional committees and people in high places ruined the lives of so many individuals who disagreed with their political philosophy or merely had friends who did so.[2] A reign of terror prevailed. If one didn't conform to the majority view on political philosophies, one risked being cast into the darkness.

Perhaps the worst part of those troubled times was the failure of our judicial system to step in and protect the freedoms of those under attack. As a result, this assault on constitutional rights

---

[2] Those who had alleged Communist friends were disparagingly known as "pinkos".

2

lasted far too long and incalculable damage was done to innocent, law-abiding citizens. Hopefully this Court will not allow that history to be repeated.

## ARGUMENT

## I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Nothing in the Recall Committee's Motion to Reconsider deals with the basic issue presented in this case – the use of a state recall process to undermine a basic federal constitutional right. It is true that Colorado's recall statute provides that the grounds for recall shall not be open to review. The question presented by this case, though, is whether that statute enables a majority to eradicate the constitutional right of a public official to religious freedom. If it does, public officials will have effectively lost many of the constitutional guarantees of other citizens.

Plaintiff has no quarrel with the judicial decisions cited in the Motion to Reconsider as far as they go.[3] But none of them addresses the question presented here, i.e., should Colorado's recall statute be allowed to override the United States Constitution? The Motion to Reconsider fails utterly to come to grips with *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943) which is the decision principally relied on by Plaintiff to deal with this question.   In fact, this decision is not once mentioned in the Motion to Reconsider.

---

[3] *People v. McPherson*, 550 P.2d 311 (S.Ct. Colo. 1976) was a search and seizure case; *DiManna v. Election Commission of the City and County of Denver*, 530 P.2d 955 (S.Ct. Colo. 1975) had to do with the legal sufficiency of the recall petition; *Bernzen v. City of Boulder*, 525 P.2d 416 (S.Ct. Colo. 1974) involved the question of the sufficiency of the recall statement; *Brooks v. Zabka*, 450 P.2d 653 (S.Ct. Colo. 1969) involved a tax levy; *Groditsky v. Pinckney*, 661 P.2d 279 (S. Ct. Colo. 1983) concerned allegations of mismanagement; and *Lockett v. Garrett*, 1 P.3d 206 (Colo. App. 1999) analyzed the legal underpinning of the recall process.

3

The Court in *Barnette* was concerned with the constitutionality of a law requiring recitation of the pledge of allegiance in a public school setting. In striking the law down, the Court stated: "The very purpose of the Bill of Rights was to remove certain subjects from the vicissitudes of political controversy, to place them beyond the reach of the *majorities* and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights *may not be submitted to vote; they depend on the outcome of no elections." Id.* at 639. (Emphasis supplied). The Court's position on the issue of using the electoral process to take away a citizen's constitutional rights could not have been more clear.

The Motion to Reconsider argues that, if the Court stops the recall in this case, it is denying the Recall Committee and the public the right to petition government for a redress of grievances. Accepting that argument at face value, the question then comes down to a balancing of that right against the Plaintiff's right to religious freedom. The Bill of Rights was intended as a safeguard against the tyranny of the majority and excessive government power. It was never intended to allow one group of citizens to gang up and extinguish the constitutional rights of another. That is precisely what is happening here.

The Recall Committee's argument that the pledge of allegiance is an acknowledgment of this nation's religious heritage lacks merit, as does the citation of *Marsh v. Chambers* and *Lynch v. Donnelly* to support such an absurd proposition. The justification for legislative prayer and congressional chaplains is that they are rooted in history and go back to the founding of this country. The addition of "under God" to the pledge of allegiance occurred during the McCarthy hysteria of

4

the 1950s (68 Stat 249 [1954]) and was specifically designed to put God on our side in the fight against atheistic communism.

There is also a distinct difference between legislative prayer/legislative chaplains on the one hand and the pledge of allegiance on the other. One is not being asked to subscribe to or participate in a prayer given by a chaplain. But the pledge specifically demands an oath to God and, here, at the risk of being expelled from office. If this is not a religious test, words have lost their meaning.

Plaintiff never asked for the trouble he now faces. He did not campaign as a nonbeliever and he never made religion an issue. Plaintiff kept his religious beliefs to himself as he has every right to do. Were it not for having been trapped into a situation requiring him to divulge those beliefs, Plaintiff would not be facing the possibility of recall.[4] If it were unconstitutional for the pledge of allegiance to be recited under the circumstances here involved as Plaintiff believes the Court will ultimately rule, the Colorado recall statute cannot be applied.

## II. IF THE PRELIMINARY INJUNCTION IS VACATED, PLAINTIFF WILL SUFFER IRREPARABLE HARM

The Recall Committee takes a cavalier attitude on the issue of irreparable harm. The Committee's contention is that Plaintiff may win the election and, therefore, the harm is "entirely speculative". This is a superficial argument that avoids the question of harm should Plaintiff *lose* the election. In that event, there is no way to remedy the wrong should plaintiff later prevail on the

---

[4] There is some reason to believe that the Plaintiff was "set up". The Mayor began leading a recitation of the pledge of allegiance at the request of Town Trustee Lori Clark, Recall Committee member Richard Clark's wife.

merits.

### III. THE THREATENED INJURY TO PLAINTIFF OUTWEIGHS ANY POSSIBLE INJURY TO THE RECALL COMMITTEE

The recall petition does not contend that the Plaintiff is incompetent or corrupt. If the preliminary injunction is vacated and Plaintiff loses the recall, he is ousted from office, a situation which cannot be remedied regardless of whether or not he ultimately prevails on the merits. If the preliminary injunction remains in effect, the Plaintiff can continue to serve as a Town Trustee in a capable and efficient manner. Further, Plaintiff's term expires in April, 2006 and he cannot run for reelection under the term limits ordinance.

### IV. THE QUESTION OF WHETHER THE MEMBERS OF THE RECALL COMMITTEE ARE "STATE ACTORS" IS MOOT

The Court has requested argument on the question of whether the individual non-Town Defendants are "state actors" within the meaning of 42 U.S.C. §1983. Plaintiff submits that they are because they have conspired to use a state statute to recall an individual merely for exercising a constitutional right. However, in view of the fact that Plaintiff has moved to dismiss these Defendants from the case, further argument on this issue has become moot.[5]

### CONCLUSION

When the Court ordered a preliminary injunction, it made the basic findings necessary to support that Order. The burden is now on the Recall Committee to persuade the Court that it should

---

[5] Curiously, counsel for the individual non-Town Defendants objects to Plaintiff's motion to dismiss his clients from the case. Consequently, it must be assumed that he would argue that they are state actors and, therefore, properly named as Defendants.

reverse itself. This the Committee has failed to do. The preliminary injunction should not be vacated.

Respectfully submitted,

Robert R. Tiernan
Attorney for the Plaintiff
3165 S. Waxberry Way
Denver, CO 80231
(303) 671-2490
Fax: (303) 743-7810

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the attached was served on March 1, 2005, by depositing in the United States Mail, postage pre-paid, to the following persons:

Steve Dawes, Esq.              Herbert C. Phillips, Esq.       Dewey Shanks
Light, Harrington & Dawes, PC  Hayes Phillips et al.          P.O. Box 635
1512 Larimer Street #550       1350 17th Street #450          Estes Park, CO 80517
Denver, CO 80202              Denver, CO 80202

7