IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-CV-00153-OWN-MJW

DAVID HABECKER and THE FREEDOM FROM RELIGION FOUNDATION, INC.,

Plaintiffs,

v.

TOWN OF ESTES PARK, COLORADO;
BOARD OF TRUSTEES OF THE TOWN OF ESTES PARK, COLORADO;
LORI JEFFREY-CLARK, TRUSTEE OF THE TOWN OF ESTES PARK, COLORADO;
SUE DOYLEN, TRUSTEE OF THE TOWN OF ESTES PARK, COLORADO;
CHUCK LEVINE, TRUSTEE OF THE TOWN OF ESTES PARK, COLORADO;
WAYNE NEWSOME, TRUSTEE OF THE TOWN OF ESTES PARK, COLORADO;
BILL PINKHAM, TRUSTEE OF THE TOWN OF ESTES PARK, COLORADO;
JOHN BAUDEK, MAYOR OF THE TOWN OF ESTES PARK, COLORADO;
VICKIE O'CONNOR, TOWN CLERK OF THE TOWN OF ESTES PARK, COLORADO;
GREG WHITE, TOWN ATTORNEY FOR THE TOWN OF ESTES PARK, COLORADO;
ESTES PARK CITIZENS FOR REPRESENTATIVE GOVERNMENT;
DEWEY SHANKS, MEMBER, ESTES PARK CITIZENS FOR REPRESENTATIVE GOVERNMENT;
NORMAN D. PRITCHARD, MEMBER, ESTES PARK CITIZENS FOR REPRESENTATIVE GOVERNMENT; and
RICHARD H. CLARK, MEMBER, ESTES PARK CITIZENS FOR REPRESENTATIVE GOVERNMENT,

Defendants.

UNITED STATES OF AMERICA,

Intervenor-Defendant.

---

**REPLY BRIEF OF INTERVENOR UNITED STATES OF AMERICA IN SUPPORT OF MOTION OR DISMISS OR, IN THE ALTERNATIVE, CROSS-MOTION FOR SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . ii

Introduction . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 1

I. PLAINTIFFS LACK STANDING TO PURSUE THEIR CHALLENGES TO THE PLEDGE STATUTE AND TO THE TOWN’S PLEDGE PRACTICE, AND IN ANY EVENT, THOSE CHALLENGES ARE MOOT. . . . . . . . . . 1

II. 4 U.S.C. § 4 IS CONSTITUTIONAL . . . . . . . . . . 5

III. THE TOWN'S PLEDGE PRACTICE IS CONSTITUTIONAL . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . 12

## TABLE OF AUTHORITIES

### CASES

County of Allegheny v. American Civil Liberties Union,
492 U.S. 573 (1989) . . . . . . . . . . 6, 7

Edmonson v. Leesville Concrete Co.,
500 U.S. 614 (1991) . . . . . . . . . . 4

Elk Grove Unified Sch. District v. Newdow,
542 U.S.1; 124 S. Ct. 2301 (2004) . . . . . . . . . . 5, 7

Gaylor v. United States,
74 F.3d 214 (10th Cir.), cert. denied,
517 U.S. 1211 (1996) . . . . . . . . . . 8

Lee v. Weisman,
505 U.S. 577 (1992) . . . . . . . . . . 10

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . 1

Lynch v. Donnelly,
465 U.S. 668 (1984) . . . . . . . . . . 6, 7, 9

Myers v. Loudon County Public Schools,
418 F.3d 395 (4th Cir. 2005) . . . . . . . . . . 7

Newdow v. The Congress of the United States,
383 F Supp.2d 1229; 2005 WL 2229873
(E.D. Cal. Sept. 14, 2005) . . . . . . . . . . 7

O'Connor v. Washburn University,
416 F.3d 1216 (10th Cir. 2005) . . . . . . . . . . 8

Powers v. Ohio,
499 U.S. (1991) . . . . . . . . . . 4

Santa Fe Indep. School Dist. v. Doe,
530 U.S. 290 (2000) . . . . . . . . . . 10

Sherman v. Community Consol. Sch. Dist. 21,
980 F.2d 437 (7th Cir.1992), cert. denied,
508 U.S. 950 (1993) . . . . . . . . . . 7

Simon v. Eastern Ky. Welfare Rights Org.,
426 U.S.26 (1976) . . . . . . . . . . 2, 3

Summum v. City of Ogden,
297 F.3d 995 (10th Cir. 2002) . . . . . . . . . . 8

Van Orden v. Perry,
___ U.S. ___; 125 S. Ct. 2854 (2005) . . . . . . . . . . 8, 9

West Virginia Bd. of Ed. v. Barnette
319 U.S. 624 (1943) . . . . . . . . . . 3

W.N.J. v. Yocum
257 F.3d. 1171 (10th Cir. 2001) . . . . . . . . . . 4

**CONSTITUTION AND STATUTES**

U.S. Const., Art. VI . . . . . . . . . . 10

4 U.S.C. § 4 . . . . . . . . . . passim

**MISCELLANEOUS**

S. Rep. No. 1287, 83d Cong., 2d Sess. (1954) . . . . . . . . . . 5

H.R. Rep. No. 1693, 83d Conf., 2d Sess. (1954)
reprinted in 1954 U.S.C.C.A.N. 2339 . . . . . . . . . . 5

The Graduate Center, City University of New York,
*American Religious Identification Survey* (2002) . . . . . . . . . . 9

Introduction

In its September 12, 2005 and September 28, 2005 briefs,[1] the intervenor United States of America demonstrated: 1) that plaintiffs, David Habecker ("Habecker") and the Freedom from Religion Foundation ("FFRF"), lack standing in this case to challenge the constitutionality of 4 U.S.C. § 4, the federal Pledge of Allegiance statute ("the Pledge statute"), or the practice of the Trustees of the Town of Estes Park of reciting the Pledge of Allegiance at their meetings, and 2) the Pledge statute and the Trustees' recitation of the Pledge are both constitutional. Nothing in plaintiffs' recent opposition brief has undermined those arguments.[2]

## ARGUMENT

### I. PLAINTIFFS LACK STANDING TO PURSUE THEIR CHALLENGES TO THE PLEDGE STATUTE AND TO THE TOWN'S PLEDGE PRACTICE, AND IN ANY EVENT, THOSE CHALLENGES ARE MOOT.

In order to demonstrate standing, a plaintiff must satisfy three essential elements: that he or she (i) has suffered (or will suffer) an "actual or imminent" injury; (ii) that is "fairly . . . trace[able] to the challenged action of the defendant"; and (iii) that is "likely" to be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted) (alteration in original). Plaintiffs have failed as to each of these elements. See U.S. Opp. Br., at 6-11; US Dism. Br., at 3-4.

First, plaintiff Habecker has not suffered injury in fact from the existence of the Pledge

---

[1] Brief of Intervenor United States of America in Opposition to Plaintiffs' Motion for Summary Judgment, Sept. 12, 2005 (docket no. 77) ("US Opp. Br."); Intervenor United States of America's Motion to Dismiss or, In the Alternative, Cross-Motion for Summary Judgment and Supporting Brief, Sept. 28, 2005 (docket no. 87) ("US Dism. Br.")

[2] Plaintiffs' Opposition to Defendants' Motions for Summary Judgment/Dismissal, Oct. 18, 2005 (docket no. 90), refiled on Oct. 28, 2005 (docket no. 92) ("Pl. Opp. Br.").

statute. The statute does not command or prescribe its recitation in any specific setting, either at the federal, state, or local level of government, or by private institutions or citizens. Nor does the statute prescribe any sanctions or adverse consequences from a decision by an individual to decline its recitation. Plaintiffs have cited no case even suggesting that the mere codification of the Pledge can create the kind of individualized injury-in-fact required for Article III standing.

Second, plaintiff Habecker's injury is not "traceable" to the Pledge statute. He has acknowledged that the "injury" from which he seeks redress in this case is the fact that he was "ousted from office" by the Town voters. Pl. Opp. Br., at 17. Habecker asserts that the "electors . . . did not have the authority to vote for [his] expulsion. . . ." Id., at 3. Habecker's injury plainly arises out of the operation of the electoral process, not the existence of a federal statute. Habecker recognizes that fact, but seeks to "trace" that election-caused injury back to the Pledge statute, by arguing that his injury arises out of the decision of the Trustees to recite the Pledge at their meetings. Then, due to his refusal to recite the Pledge at those meetings, he asserts, the voters recalled him from his position. Pl. Opp. Br., at 17-18. Thus, plaintiff Habecker acknowledges that the injury caused in March 2005 by the independent action of one entity (the electorate) followed the independent decision of a second entity, the Trustees, to begin reciting the Pledge in May, 2004. This chronology of events, marked by independent decisions at the local level, shows that Habecker's injury is not fairly "traceable" to the Pledge statute, but to actions taken by local decision makers. See Simon v. Eastern Ky.Welfare Rights Org., 426 U.S. 26, 42-43 (1976)(plaintiffs who alleged that they had been denied services at hospitals could not challenge a revenue ruling as to the hospitals' tax-exempt status; it was "purely speculative" whether the denial of services "fairly can be traced" to the government's action).

Plaintiffs' citation of West Virginia Bd. of Ed. v. Barnette, 319 U.S. 624 (1943), demonstrates why Habecker's injury is not traceable to the Pledge statute. In that case, the Supreme Court did not invalidate the 1943 version of the Pledge statute. Habecker acknowledges that the Court, instead, held unconstitutional a West Virginia law, and implementing state board of education resolution, insofar as those provisions required recitation of the Pledge.[3] Habecker also essentially admits that his claims are not asserted against the "facial" constitutionality of 4 U.S.C. § 4, for he contends that the Pledge has become what he describes as a "loyalty oath" in specific factual settings. Pl. Opp. Br., at 4 ("[a]t least in Estes Park . . . and surely elsewhere").[4]

Finally, Habecker has failed to demonstrate how relief from this Court will redress his "injury." A declaration that the Pledge statute is unconstitutional, either "on its face" or "as applied" by the Trustees' recitation practice, will not restore Habecker to office. Habecker only can show that such a declaration may give him an incentive to run for election. But Habecker has made no such decision. Pl. Opp. Br., at 19. It is speculative for Habecker to suggest that invalidation of the Trustees' Pledge practice will make a difference in the chances of his being restored to office. Simon, supra, 426 U.S. at 45-46 (holding that plaintiffs did not demonstrate a "substantial likelihood that victory in this suit" would result in plaintiffs receiving the hospital

---

[3] Pl. Opp. Br., at 9; cf. id at 3, 11 n.6 (suggesting that the Pledge statute had been held unconstitutional).

[4] Plaintiffs question why the United States has intervened in this action, insofar as its "defense . . ., if successful," would result only its dismissal. Pl. Opp. Br., at 18. But plaintiffs seek a declaration of unconstitutionality of a federal statute, thus directly implicating the United States' interests in this case, which include identifying jurisdictional deficiencies in that challenge. In addition, that interest extends to corollary efforts by plaintiffs to have the Pledge held unconstitutional in local settings.

care they sought).

The United States also has shown that FFRF lacks standing, chiefly because the complaint utterly fails to describe any "objecting" individual FFRF member who has been exposed to the recitation of the Pledge of Allegiance in any specific context, including to its recitation at Trustee meetings. U.S. Opp. Br., at 9. Plaintiffs respond that FFRF members wish to remain anonymous out of fear or embarrassment. Pl. Opp. Br., at 20-21. But that begs the question of why no individual FFRF member (other than Habecker) has even attempted to become part of this suit, which participation would provide a concrete setting in which to evaluate an "as applied" challenge to the recitation of the Pledge. No FFRF member has sought party status by proceeding as a "Doe" plaintiff, under which his or her identity might be shielded in public filings. See W.N.J. v. Yocom, 257 F.3d 1171, 1172 (10th Cir. 2001) (noting that proceeding under a pseudonym in federal courts is unusual, but permissible in limited circumstances, such as when "significant privacy interests" are at stake). Although plaintiffs note that third-party standing has extended to defendants who can challenge the exclusion of jurors, the practical difficulties of a juror challenging his or her exclusion, see Edmonson v. Leesville Concrete Co., 500 U.S. 614, 629 (1991) (citing Powers v. Ohio, 499 U.S. 400, 414-15 (1991)), do not exist here.

The United States also has shown that plaintiff Habecker's objection to the recitation of the Pledge is moot, because Habecker is no longer a Trustee. U.S. Opp. Brief, at 11-12. As demonstrated supra, Habecker's securing declaratory relief as to the constitutionality of the Trustees' Pledge recitation practice will not affect his status as a former Trustee.

## II. 4 U.S.C. § 4 IS CONSTITUTIONAL

The United States previously has demonstrated that the current Pledge statute, amended in 1954 to add the words "under God" to the text of the recitation, is constitutional. US Opp. Br., at 12-30. Moreover, Congress reviewed the issue in 2002, and reaffirmed the constitutionality of the statute. Id., at 13, 29.

Plaintiffs do not confront any of that legislative history. Their only comment is to assert that the words "under God" were added "during the hysteria of the McCarthy era" by Congress, which "panicked" over the "perceived threat from Communism." Pl. Opp. Br., at 4. That inflated rhetorical description, devoid of citation, studiously ignores the legislative history.

The House and Senate Committee Reports viewed the 1954 amendment as a permissible acknowledgment that, "[f]rom the time of our earliest history our peoples and our institutions have reflected the traditional concept that our Nation was founded on a fundamental belief in God." H.R. Rep. No. 1693, 83d Cong., 2d Sess., 1954 U.S.C.C.A.N. at 2340; see also S. Rep. No. 1287, 83d Cong., 2d Sess. 2 (1954). Both Reports traced the numerous references to God in historical documents central to the founding and preservation of the United States, from the Mayflower Compact to the Declaration of Independence to President Lincoln's Gettysburg Address, with the latter having employed the same reference to a "Nation[] under God." H.R. Rep. No. 1693, 1954 U.S.C.C.A.N. at 2340-41; S. Rep. No. 1287, supra, at 2. The Reports further identified a political purpose for the amendment — to highlight a fundamental difference between the United States and Communist nations. See H.R. Rep. No. 1693, 1954 U.S.C.C.A.N. at 2340; S. Rep. No. 1287, supra, at 2; see also Elk Grove Unified School Dist. v. Newdow, 542

U.S. 1; 124 S.Ct. 2301, 2325 (2004) (O'Connor, J., concurring).

Contrary to Plaintiffs' argument, the Pledge is not "a declaration of belief," nor an "affirmation of God." Pl. Opp. Br., at 10. Nor is it an effort to convey that ours is a "government based on monotheism." Id., at 4. There is a constitutional difference between *acknowledgment* of the role that belief in "God" has played in the Nation's history, and *endorsement* of "God" or monotheism. See Lynch v. Donnelly, 465 U.S. 668, 674-78 (1984). The Pledge constitutes a permissible acknowledgment, not an unconstitutional endorsement. U.S. Opp. Br., at 32-37; US Dism. Br., at 8-9.

Two Supreme Court decisions, Lynch v. Donnelly, 465 U.S. 668 (1984), and County of Allegheny v. American Civil Liberties Union, 492 U.S. 573 (1989), have said without qualification that the Pledge is consistent with the Establishment Clause. In Lynch, the Court described the Pledge as an illustration of "the Government's acknowledgment of our religious heritage," 465 U.S. at 676-77, similar to "countless other illustrations," id., such as the "official references to the value and invocation of Divine guidance in deliberations and pronouncements of the Founding Fathers" that are "replete" in our nation's history. Id., 465 U.S. at 675. In County of Allegheny, the Court reaffirmed Lynch's approval of the reference to God in the Pledge, noting that the Justices in Lynch viewed the Pledge as "consistent with the proposition that government may not communicate an endorsement of religious belief." 492 U.S. at 602-603 (citations omitted). Both cases, moreover, used the Pledge as a baseline for adjudicating the constitutionality of other forms of government action. Those decisions demonstrate that the Establishment Clause permits official acknowledgment — in our songs, mottos, buildings, court cries, and on our coins — of the role religion has played in the formation of the Nation's

governmental institutions. That core principle of Establishment Clause jurisprudence disposes of plaintiffs' claims.

Plaintiffs largely ignore Lynch and County of Allegheny in their recent opposition. While plaintiffs describe the cited observations as mere dicta, Pl. Opp. Br., at 13-14, the fact remains that Justices, over a series of years, have almost universally identified the Pledge as secular, not religious. U.S. Opp. Br., at 20-23.[5] Our nation's history is replete with examples of governmental acknowledgments of the role of religion in the nation's founding, and in its culture. Id., at 14-20.[6] Plaintiffs acknowledge, but do not try to distinguish, one of the two Circuit decisions that have upheld the constitutionality of state and local Pledge recitation policies. Pl. Opp. Br., at 15. Both Myers v. Loudon County Public Schools, 418 F.3d 395 (4th Cir. 2005), and Sherman v. Community Consol. Sch. Dist. 21, 980 F.2d 437 (7th Cir.1992), cert. denied, 508 U.S. 950 (1993), however, represent persuasive reasoning for upholding the Pledge policies at issue here.[7] Plaintiffs argue that, because the words "under God" exist within the Pledge, the

---

[5] Plaintiffs cite the remarks of several Justices in dissents, suggesting that the reasoning of various decisions could cast doubt on the Pledge's constitutionality. Pl. Opp. Br., at 15 n.9. But those cautionary statements are not the equivalent of the affirmative statements about the Pledge's constitutionality. For example, plaintiffs cite Justice Thomas's concurring opinion in Elk Grove, as support for their argument that the Pledge is unconstitutional, but Justice Thomas concluded in that opinion that Elk Grove's Pledge policy "fully comports with the Constitution." 124 S.Ct. at 2333 (Thomas, J., concurring).

[6] Plaintiffs note several statements of Founders like James Madison and Thomas Jefferson that speak to a "separation" of church and state, Pl. Opp. Br., at 5, but those statements do not undermine the many official examples of recognition of the role of religion in the nation's founding. Nor have plaintiffs corroborated the assertion that most of the Founders were "deists." Id., at 6.

[7] The United States previously analyzed the one decision favorable to plaintiffs' position, Newdow v. The Congress of the United States, 383 F. Supp. 2d 1229; 2005 WL 2229873 (E.D. Cal. Sept. 14, 2005), and showed that it does not support plaintiffs' position that the Pledge be

religious connotation that those words convey - to Plaintiff Habecker specifically - means that the Court must ignore the context of the two words in the recitation of the Pledge of Allegiance. Pl. Opp. Br., at 11. That argument is fundamentally at odds with the Supreme Court's Establishment Clause jurisprudence. Its jurisprudence evaluates government involvement or activity implicating religion or religious groups by examining the entirety of the challenged action or activity, not the alleged "religious" aspect of the action or activity in isolation.[8] Plaintiffs would replace the courts' objective evaluation of an Establishment Clause issue with a test under which the objector's perception of a religious element would prevail. Pl. Opp. Br., at 11 n.6. That result is fundamentally inconsistent, for example, with the Court's "reasonable observer" test, and with the application of that test in this Circuit. Gaylor v. United States, 74 F.3d 214, 217-18 (10th Cir.), cert. denied, 517 U.S. 1211 (1996) ("In God We Trust" on currency does not violate the Establishment Clause); see also O'Connor v. Washburn University, 416 F.3d 1216, 1228 (10th Cir. 2005); Summum v. City of Ogden, 297 F.3d 995, 1010 (10th Cir. 2002)(cases applying the "reasonable observer" test).

Finally, there is no merit to plaintiffs' claims that the recitation of the Pledge is susceptible to challenge because there has been controversy ("divisiveness") or litigation on its constitutionality in the courts. Under that theory, the filing of litigation would serve to invalidate

---

held unconstitutional in the setting of the Trustees (all mature adults) reciting the Pledge. US Dism. Br., at 7-9.

[8] As then-Chief Justice Burger observed: "Focus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause." Lynch, 465 U.S. at 680; accord Van Orden v. Perry, ___ U.S. ___; 125 S.Ct. 2854, 2869 (2005) (Breyer, J., concurring) (in determining whether Ten Commandments monument violates the Establishment Clause, "that inquiry requires us to consider the context of the display").

a government practice, but that theory has been rejected by the Supreme Court. See Lynch v. Donnelly, supra, 465 U.S. at 684-85. Plaintiffs' reliance on the concurring opinion of Justice Breyer in Van Orden, supra, is also misplaced. Justice Breyer recounted the 40 years, "nearly two generations," in which a Ten Commandments display "stood apparently uncontested," observing that the duration indicated that "few individuals, whatever their system of beliefs, are likely to have understood the monument, as amounting, in any significant detrimental way," to be the government promoting religion. 125 S. Ct. at 2870-71. Justice Breyer added that the experience "helps us to understand that as a practical matter of *degree* this display is unlikely to prove divisive," which he considered "critical in a borderline case such as this one." Id., at 2871. Justice Breyer's statements do no support plaintiffs' claim that any amount of controversy or litigation would bear significantly upon an evaluation of the constitutionality of the Pledge, which, until very recently, had attracted little dispute. In any event, plaintiffs fail to show substantial controversy as to the Pledge of Allegiance.[9]

[9] Plaintiffs' citation to a study describing the number of adult "nonbelievers" does not support the contention that more controversy as to the recitation of the Pledge will occur. See The Graduate Center, City University of New York, *American Religious Identification Survey* (2002), Key Findings, Exh. 1 (estimating 902,000 "atheist," 991,000 "agnostic," 49,000 "humanist," 53,000 "secular," and 27,486,000 "no religion")(visited on Nov. 7, 2005), accessible at http://www.gc.cuny.edu/faculty/research_briefs/aris/aris_index.htm

## III. THE TOWN'S PLEDGE PRACTICE IS CONSTITUTIONAL

The second fundamental flaw in Plaintiffs' argument remains the fact that plaintiffs challenge an alleged policy of compulsory recitation of the Pledge at Trustee meetings, but the facts show that such a "compulsory" recitation does not exist as a policy. Plaintiff Habecker tries to transform his personal discomfort and objection to the words of the Pledge into a compulsion, that, objectively speaking, does not exist. It is thus inaccurate for Habecker to claim that he "was [f]orced to [r]ecite the Pledge or [l]ose his [o]ffice." Pl. Opp. Br., at 11 (Heading). Habecker has presented no facts showing any such "force" was exerted at any Trustee meeting he attended. No Trustee is alleged to have forced Habecker to recite the Pledge, nor has Habecker identified any document that expresses such "compulsion."[10]

Citing cases such as Lee v. Weisman, 505 U.S. 577 (1992), and Santa Fe Indep. School Dist. v. Doe, 530 U.S. 290 (2000), Habecker advances a psychological compulsion or "coercion" theory. Pl. Opp. Br., at 11-12. But Habecker continues to miss the important contextual limitations of those cases - which involved school-aged children objecting to recitation of prayers in various school-related settings. Habecker is a mature adult, and the Pledge of Allegiance is a "patriotic exercise" - it is not a prayer. US Opp. Br., at 37-42; US Dism. Br., at 8-9.

In its opening brief, the United States described why the Pledge of Allegiance statute does not violate the provisions of Article VI of the Constitution - the Pledge is not a religious test for public office. U.S. Opp. Br., at 42-44. Although plaintiffs contend that the Town defendants and the United States have failed to rebut his contrary argument, Pl. Opp. Br., at 21, that is not

---

[10] See Brief in Support of the Town Defendants' Motion for Summary Judgment, or in the Alternative, Motion to Dismiss, Sept. 28, 2005 (docket no. 89)("Town Def. Br."), at 5, ¶¶ 20-22 (Statement of Undisputed Facts), 16.

accurate.

The Pledge statute plainly does not constitute a "test oath" for office - it simply prescribes the words of its recitation, but does not stipulate or require who must recite it. Habecker continues to conflate the statute with the independent decision of the Trustees to recite the Pledge and the separate decision of the voters to recall Habecker from office. Second, notwithstanding Habecker's claim to the contrary, reciting the Pledge has not been a qualification for serving as Trustee, and the Trustees did not institute a practice of compulsory recitation of the Pledge. US Opp. Br., at 44; Town Def. Br., at 16.

CONCLUSION

For the foregoing reasons, and for the reasons stated in the United States prior briefs, this Court should reject plaintiffs' challenge to the constitutionality of the Pledge of Allegiance and to the Town's practice of reciting the Pledge at its Board of Trustee meetings.

Dated: November 7, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

FELIX V. BAXTER
Branch Director

WILLIAM J. LEONE
United States Attorney

KEVIN TRASKOS
Assistant United States Attorney

s/ Theodore C. Hirt
THEODORE C. HIRT
(D.C. Bar 242982)
Assistant Director
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7106
P.O. Box 883
Washington, D.C. 20530
Telephone: (202) 514-4786
E-mail: theodore.hirt@usdoj.gov
Fax: (202) 616-8470

Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

jwells1960@netzero.com
sdawes@lhdlaw.com
STsai@lhdlaw.com
dostermeier@lhdlaw.com
lcochran@lhdlaw.com
hcphillips@hphclaw.com
mla@hphclaw.com
Kevin.Traskos@usdoj.gov

and I hereby certify that I have mailed the foregoing to the following non CM/ECF participant in the manner indicated by the non-participants' name:

Dewey Shanks via U.S. Mail
P.O. Box 635
Estes Park, CO 80517

s/ Theodore C. Hirt
THEODORE C. HIRT
(D.C. Bar 242982)
Assistant Director
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7106
P.O. Box 883
Washington, D.C. 20530
Telephone: (202) 514-4786
E-mail: theodore.hirt@usdoj.gov
Fax: (202) 616-8470

Attorney for the United States of America