IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00153–EWN–MJW

DAVID HABECKER and
THE FREEDOM FROM RELIGION FOUNDATION, INC.,

      Plaintiffs,

v.

TOWN OF ESTES PARK, COLORADO;
BOARD OF TRUSTEES OF THE TOWN OF ESTES PARK, COLORADO;
LORI JEFFREY-CLARK, Trustee of the Town of Estes Park, Colorado;
SUE DOYLEN, Trustee of the Town of Estes Park, Colorado;
CHUCK LEVINE, Trustee of the Town of Estes Park, Colorado;
WAYNE NEWSOM, Trustee of the Town of Estes Park, Colorado;
BILL PINKHAM, Trustee of the Town of Estes Park, Colorado;
JOHN BAUDEK, Mayor of the Town of Estes Park, Colorado;
VICKIE O'CONNOR, Town Clerk of the Town of Estes Park, Colorado;
GREG WHITE, Town Attorney for the Town of Estes Park, Colorado;
ESTES PARK CITIZENS FOR REPRESENTATIVE GOVERNMENT;
DEWEY SHANKS, Member, Estes Park Citizens for Representative Government;
NORMAN D. PRITCHARD, Member, Estes Park Citizens for Representative Government;
and
RICHARD H. CLARK, Member, Estes Park Citizens for Representative Government;

      Defendants,

and

UNITED STATES OF AMERICA,

      Intervenor Defendant.

---

**AMENDED ORDER AND MEMORANDUM OF DECISION**

---

Plaintiff David Habecker was an elected town trustee of the Town of Estes Park, Colorado, until he was recalled by the voters on March 22, 2005, in a recall election dominated by the issue of whether those voters wished to continue to be represented by a trustee who had refused to stand and recite the Pledge of Allegiance at trustee meetings, as Mr. Habecker had done.  Believing primarily that this dénouement of events precipitated by his refusal violated his rights under the United States Constitution, he brought this federal civil rights case arising under 42 U.S.C. § 1983 (2006) ("section 1983") and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (2006) (the "Declaratory Judgment Act").  The other Plaintiff is Freedom From Religion Foundation, Inc. ("Plaintiff Foundation"), a non-profit corporation of which Mr. Habecker is a member and which exists to promote the separation of church and state.  Defendants are: (1) the Town of Estes Park, Colorado and certain official representatives thereof, including the town board of trustees (the "Board"), mayor John Baudek ("Defendant Mayor"), town clerk Vickie O'Connor ("Defendant Clerk"), and town attorney Greg White (together, "Town Defendants"); and (2) Estes Park Citizens for Representative Government and three of its members, Dewey Shanks, Norman Pritchard, and Richard Clark (together, "Committee Defendants").  Plaintiffs allege that Defendants violated Plaintiff Habecker's constitutional rights by requiring him to recite the Pledge of Allegiance during Board meetings and subjecting him to a recall election based on his refusal to do so.[1]  Plaintiffs seek declaratory relief, injunctive relief, and damages.  This matter is before the court on: (1) "Plaintiffs' Motion for Summary Judgment," filed July 30, 2005; (2)

---

[1] Where required, the court will refer to Town Defendants and Committee Defendants collectively as "Defendants" and to individual Defendants by name.

"Intervenor United States Of America's Motion to Dismiss or, in the Alternative, Cross-Motion for Summary Judgment, and Supporting Brief," filed September 28, 2005; and (3) "Town Defendants' Motion for Summary Judgment, or in the Alternative, Motion to Dismiss," filed September 28, 2005.  Jurisdiction is premised primarily upon the existence of a federal question, 28 U.S.C. § 1331 (2006).

## FACTS

### 1.   Factual Background

#### a.   Pledge of Allegiance Overview

Before turning to the substance of the case, a brief history of the matter at its heart is instructive.  The pledge of allegiance (the "Pledge") was initially conceived more than a century ago, and appeared in a widely circulated national magazine in 1892 to commemorate Christopher Columbus's voyage to America.  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 6 (2004). In 1942, Congress first codified the Pledge in a set of "'rules and customs pertaining to the display and use of the flag of the United States of America.'"  *Id.*  The Pledge contained no reference to God until 1954, when Congress approved amendments leading to the Pledge generally known today.[2]  Act of June 14, 1954, ch. 297, 68 Stat. 249.

---

[2]The Pledge as codified in 1942 read: "I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation, indivisible, with liberty and justice for all."  *See Elk Grove*, 542 U.S. at 7.

The Pledge is currently codified at Title Four of the United States Code, which covers, in relevant part, treatment of the flag and seal of the United States. 4 U.S.C. § 1 (2006). Section four of Title Four provides the body of the Pledge and the manner in which it should be recited.

> The Pledge of Allegiance to the Flag: "I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.", [sic] should be rendered by standing at attention facing the flag with the right hand over the heart. When not in uniform[,] men should remove any non-religious headdress with their right hand and hold it at the left shoulder, the hand being over the heart. Persons in uniform should remain silent, face the flag, and render the military salute.

*Id.* § 4. As the Supreme Court has held, "the [Pledge] evolved as a common public acknowledgment of the ideals that our flag symbolizes. Its recitation is a patriotic exercise designed to foster national unity and pride in those principles." *Elk Grove*, 542 U.S. at 6.

### b.   Factual Summary

From 1984 through his recall in 2005, Plaintiff Habecker intermittently served in an elected position as a trustee on the Board. During all times pertinent to the case at bar, the Board conducted bi-weekly formal meetings, which all trustees were required to attend. The Board meetings were open to the public.

At a meeting that took place on May 11, 2004, Defendant Mayor, himself a trustee on the Board, announced a new policy of opening Board meetings with a recitation of the Pledge. Defendants contend that recitation of the Pledge was not mandatory or a condition of serving on the Board. At the May 11, 2004 Board meeting, and for several subsequent meetings, Plaintiff Habecker stood and recited the Pledge, but omitted the phrase "under God" contained therein.

Beginning with the Board meeting on September 14, 2004, and at all meetings thereafter, Plaintiff Habecker remained seated and refrained from reciting the Pledge.

At some point after Plaintiff Habecker began refraining from reciting the Pledge, Committee Defendants organized efforts to request an election to recall Plaintiff Habecker from office.  As required by Colorado law, Committee Defendants wrote a petition, in which they set forth a statement of grounds for recall.  The "summary of proposed recall of trustee [Plaintiff] Habecker" read as follows:

> Electors suffer loss of confidence in [Plaintiff] Habecker's ability to represent citizens' national pride, patriotism, and common decency.  Prior to [Board] meetings, he purposefully and irreverently chooses to publicly sit, facing away from the flag of the United States, during recital of the Pledge [].  His defiant behavior occurs because the phrase "[] under God []" offends him.  He states he intends to continue until the United States Congress strikes the phrase from the Pledge [].

> [Plaintiff] Habecker failed to reveal this violation of his principles during campaigns for election.  We consider this omission a deliberate tactic to assure voter ballots towards his election.  We consider this tactic unethical and unacceptable.

> We respect [Plaintiff] Habecker's right to free speech under the Constitution of the United States, but insist on maintenance of responsibility, accountability, leadership, respect for others, and high standards of public conduct.  His vital beliefs regarding church/state  personal conflicts were not revealed at the critical time of election.  We do not regard these actions, omissions or motivations honorable, and demand his removal from this elected position.

On November 24, 2004, Committee Defendants filed the petition.

On December 2, 2004, Defendant Clerk certified the petition as facially and procedurally sufficient.  On December 14, 2004, the Board held a meeting, at which it received the petition and scheduled a recall election to take place on February 15, 2005.  Plaintiff Habecker neither filed a

written protest with Defendant Clerk nor requested judicial review of the petition for sufficiency. On February 10, 2005, upon motion by Plaintiff Habecker, this court issued a preliminary injunction enjoining the recall election, then scheduled to be held February 15, 2005. On March 2, 2005, this court reconsidered the matter and dissolved the preliminary injunction.

On March 8, 2005, the Board held a meeting, at which it scheduled the recall election to take place on March 22, 2005. The election took place as scheduled, and Plaintiff Habecker lost his seat on the Board as a result.

**2.      *Procedural History***

On January 28, 2005, Plaintiff Habecker individually initiated this action by filing a complaint in this court. Plaintiff Habecker sought: (1) declaratory judgments that the Pledge and Colorado law providing for recall elections are both unconstitutional; (2) injunctions against Defendants, proscribing both the recall election and recitation of the Pledge during Board meetings; and (3) damages.

Concurrently with the initial complaint, Plaintiff Habecker filed a motion for a preliminary injunction, in which he sought to enjoin Defendants from: (1) conducting the recall election; and (2) including the Pledge in Board meetings. On February 7, 2005, Town Defendants filed a skeletal response to Plaintiff Habecker's motion, in which they mainly noted that Plaintiff Habecker had not pointed to any procedural deficiencies in the recall petition or election in question. On February 10, 2006, after hearing argument in which Town Defendants announced their neutral stance on the subject, this court granted Plaintiff Habecker's motion and enjoined the recall election.

On February 18, 2005, Committee Defendants Pritchard and Clark moved the court to reconsider its holdings concerning Plaintiff Habecker's preliminary injunction motion.  On February 22, 2005, this court granted the motion.  The parties rebriefed the issues, and on March 2, 2005, this court held a second hearing on Plaintiff Habecker's preliminary injunction motion, in which it vacated its prior holding and denied the motion.

On May 10, 2005, Plaintiffs filed an amended complaint, introducing Plaintiff Foundation into this action.  It is markedly difficult to describe with precision Plaintiffs' jumbled and myriad claims.  Nevertheless, this court endeavors to tame the hydra with which it has been presented.  Plaintiffs' amended complaint contains one "claim for relief," which is divided into eight subsections styled as "counts," some of which state causes of action or at least the framework thereof, others of which are merely general allegations.[3]  Plaintiffs "claim for relief" is followed by a list of nine separate prayers for relief in various forms.

Plaintiffs assert that:  (1) the Pledge itself is an unconstitutional establishment of religion; (2) recitation of the Pledge during Board meetings served as an unconstitutional establishment of religion; (3) subjecting Plaintiff Habecker to a recall election based on his refusal to recite the Pledge violated his rights to freedom from religious tests for public office, freedom of expression, and free exercise of religion under the Colorado and United States Constitutions; (4) Colorado

---

[3]By way of example, "Count I" states that the Pledge "constitutes an Establishment of Religion in violation of Amendment One [sic] to the United States Constitution," thus setting forth at least the skeleton of a claim.  In contrast, "Count VIII" reads, "[t]he "statement of grounds for the recall was untrue in that it falsely accused Plaintiff [Habecker] of turning away from the flag and refusing to discuss his objection to the [Pledge]" during his campaign.

law providing for recall elections is, in part, unconstitutional; and (5) Town Defendants abused their discretion and violated Colorado law by allowing the recall election to take place.   Plaintiffs seek declaratory judgments stating that: (1) the Pledge violates the First Amendment; (2) the recall election infringed upon Plaintiff Habecker's First Amendment rights to free expression and exercise of religion; (3) the recall election constituted a religious test for public office, in violation of Article VI of the United States Constitution; (4) the recall election violated Plaintiff Habecker's rights to free speech under Article II, Section 4 of the Colorado Constitution; (5) the recall election is null and void; (6) any Board action depending upon the presence or vote of Plaintiff Habecker's successor is null and void; and (7) to the extent the Colorado Constitution and Colorado recall election statute prohibit judicial review of grounds for recall elections, they are violative of the United States Constitution.   Further, Plaintiffs beseech this court to: (1) enjoin recitation of the Pledge while the Board is conducting official Board business; (2) order Plaintiff Habecker's reinstallation in his prior position on the Board; and (3) grant Plaintiff Habecker damages consisting of his lost wages and expenses incurred in campaigning against the recall.

Greatly aiding this court's analysis, Plaintiffs effectively summarize their claims in their motion for summary judgment by explaining that they:

> "seek two forms of relief: (1) a declaratory judgment and (2) a judgment that Plaintiff Habecker's civil rights have been violated. . . .  For the most part, these two causes of action merge: the declaratory judgment being rendered on the basis of equitable principles and the civil rights claim being similar except that it adds the element of state action infringing on Plaintiff Habecker's [c]onstitutional rights."

On July 30, 2005, Plaintiffs moved for summary judgment.[4]  Plaintiffs argue they are entitled to summary judgment because they have established that: (1) the state forced Plaintiff Habecker to pay homage to a deity by reciting the Pledge; (2) the forced recitation of the Pledge was a religious test for public office; and (3) the recall election was state action within the meaning of section 1983.  On September 12, 2004, Town Defendants responded to Plaintiffs' motion.  On September 13, 2005, Defendants Pritchard and Clark joined in Town Defendants' response.  On September 12, 2005, the United States of America ("Intervenor") intervened in the case solely for the purpose of upholding the constitutionality of the Pledge.  On the same date, Intervenor filed a response to Plaintiffs' motion for summary judgment.  Plaintiffs did not file a reply brief in support of their motion.

On September 28, 2005, Intervenor filed a motion for summary judgment in which it argued that Plaintiffs' claims for declaratory judgment must fail because: (1) Plaintiffs lack standing to challenge the Pledge; (2) Plaintiffs' claims are moot; and (3) the Pledge is

---

[4]Plaintiffs patently did not follow this court's practice standards in filing their motion for summary judgment.  The practice standards require that in moving for summary judgment, a party must include a section styled "Statement of Undisputed Material Facts," in which "the movant shall set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law."  (*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 1.)  In plain contravention of the standards, Plaintiffs failed to present a statement of facts in their brief.

Notwithstanding the foregoing, few facts in this case are in dispute, and Plaintiffs properly brief their version of the facts in their response brief to Defendants' and Intervenor's motions for summary judgment.  Consequently, the court analyzes Plaintiffs' motion, despite its obvious flaws.

constitutional on its face and as recited under the circumstances in this case.  On September 28, 2005, Town Defendants filed a motion for summary judgment, in which they argue the same points as Intervenor, and also that: (1) the recall election was constitutional; (2) the Colorado recall statute is constitutional; (3) Town Defendants did not abuse their discretion in allowing the recall election to take place; and (4) no state action has occurred to support Plaintiffs' section 1983 claims.  On October 28, 2005, Plaintiffs filed a brief in which they simultaneously responded to Town Defendants' and Intervenor's motions.  On November 7, 2005, Intervenor filed a reply brief in support of its motion.  On November 14, 2005, Town Defendants filed a reply brief in support of their motion.

## ANALYSIS

### 1.    *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

For the reasons detailed below, this court declines to reach the underlying merits of the parties' positions and decides the case on technical, but well-established, legal doctrines which stop short of a decision on the merits. Specifically, the court concludes that Plaintiffs do not have standing to challenge the Pledge of Allegiance itself, because the Pledge itself did not cause Plaintiff Habecker's recall or any other injury. They lack standing to challenge any alleged forced recitation of the Pledge because it is undisputed that there was no forced recitation, and any injury caused by the actions of the recall Committee Defendants and the voters cannot be redressed by a declaratory judgment from this court. The court also concludes, alternatively, that the declaratory judgment claim is now moot. Finally, the court concludes that Plaintiffs have no claim under 42 U.S.C. § 1983, because the injury of which Plaintiff Habecker complains was not one caused by persons acting "under color of" state law, as required by section 1983.

**2.      Evaluation of Claims**

      **a.      Plaintiffs' Declaratory Judgment Claims**

Plaintiffs, Town Defendants, and Intervenor all assert they are entitled to summary judgment on Plaintiffs' declaratory judgment claims.  Plaintiffs seek declaratory judgments that the Pledge itself and recitation thereof under the circumstances in this case violate the Establishment Clause.  The Establishment Clause of the First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . respecting an establishment of religion."  U.S. Const., amend. 1, cl. 1; *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1230 (10th Cir. 1998).  "At its core, the Establishment Clause enshrines the principle that government may not act in ways that 'aid one religion, aid all religions, or prefer one religion over another.'"  *Snyder*, 159 F.3d at 1230 (quoting *Lee v. Weisman*, 505 U.S. 577, 600 [1992] [Blackmun, J., concurring]).  The Establishment Clause is violated by the enactment of laws which establish an official religion independent of whether those laws operate directly to coerce nonobserving individuals and does not depend upon any showing of direct governmental compulsion.  *Engel v. Vitale*, 370 U.S. 421, 430–33 (1962).

      Affording Plaintiffs' claims the requisite liberal construction, the court interprets Plaintiffs' argument to be that the Pledge violates the Establishment Clause on its face and as recited per the Board's alleged policy.  *See Koch v. Koch Indus.*, 203 F.3d 1202, 1220 (10th Cir. 2000) (requiring liberal construction of plaintiffs' claims).  Intervenor and Town Defendants separately argue that they are entitled to summary judgment on Plaintiffs' claims because: (1) Plaintiffs cannot satisfy certain threshold justiceability requirements to bring claims under the Declaratory

Judgment Act; and (2) neither the Pledge itself nor recitation thereof is unconstitutional.  Plaintiffs respond that they have standing and their claims are not moot, as they relate to Plaintiff Habecker's injury in the form of being recalled from office.  Plaintiffs also move for summary judgment, and, taking a slightly different tack than the one they take in their response to Town Defendants' and Intervenor's motions, argue no question of fact exists that both the Pledge itself and recitation of Pledge serve as an unconstitutional establishment of religion through coercive and forced homage to a deity.

### i.   *Justiciability under the Declaratory Judgment Act*

The Declaratory Judgment Act provides that "upon the filing of an appropriate pleading, [a court] may declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201(a) (2006); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  To invoke the jurisdiction of the federal courts, parties seeking declaratory judgments must have an actual case or controversy to satisfy the Article III requirements of justiceability.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  Intervenor and Town Defendants argue that Plaintiffs cannot satisfy the Article III justiceability requirements, because they lack standing and their claims are moot.

### (1)   *Standing*

First, Intervenor and Town Defendants argue that Plaintiffs do not have standing to challenge the Pledge.  The standing doctrine is rooted in Article III's "case or controversy" requirement, and underscores the necessity that a Plaintiff have a personal stake in the outcome of a case.  *See Faustin v. City & County of Denver*, 268 F.3d 942, 947–48 (10th Cir. 2001).  "The

federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 750 [1984]).  The party who seeks exercise of jurisdiction carries the burden to allege facts demonstrating the propriety of invoking judicial resolution of the dispute.  *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 518 [1975]; *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 [1936]).  To establish standing, Plaintiffs must show: (1) injury in fact; (2) the injury is fairly traceable to the challenged action; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *accord Faustin*, 268 F.3d at 947–48 (citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 [10th Cir. 1998]).

Here, Town Defendants and Intervenor assert that Plaintiffs lack standing to challenge the Pledge on its face because they cannot establish an injury in fact caused by the Pledge statute itself.  In response, Plaintiffs argue that Plaintiff Habecker "unquestionably" has standing because: (1) he was injured by being recalled from office; (2) he was recalled because of his refusal to recite the Pledge; and (3) his injury can be redressed by this court.  Plaintiffs argue further that Plaintiff Habecker's standing may somehow be imputed to Plaintiff Foundation.  In relation to any injury allegedly caused by the Pledge statute on its face, Plaintiffs' arguments are wholly unavailing.

"The Pledge itself does not compel recitation anywhere, at any time."  *Newdow v. Cong. of the United States*, 383 F. Supp. 2d 1229, 1243 (E.D. Cal. 2005); *see also* 4 U.S.C. § 4 (2006).  It would therefore appear that the alleged injury underlying Plaintiffs' complaint — as Plaintiffs

argue here, the recall election — could not have been caused by Pledge on its face.  Indeed, although Plaintiffs challenge the Pledge on its face, Plaintiffs' claim, "when properly understood," attacks the Board's alleged policy of requiring recitation of the Pledge.  *Newdow*, 383 F. Supp. 2d at 1243.  To establish standing, Plaintiffs must demonstrate that "they have sustained or are immediately in danger of sustaining some direct injury, and the injury or threat of injury must be real and immediate, not conjectural or hypothetical."  *Faustin*, 268 F.3d at 947.  Still more relevant here, judicial inquiry into standing "must be 'especially rigorous'" when deciding the merits of the case would require determination "'whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'"  *Schaffer v. Clinton*, 240 F.3d 878, 882–83 (10th Cir. 2001) (quoting *Raines v. Byrd*, 521 U.S. 811, 819–20 [1997]).  Because Plaintiff has not established injury caused by the Pledge statute itself, this court simply cannot find that Plaintiffs have standing to bring a claim challenging the Pledge of Allegiance itself.

Regarding the Board's alleged policy of requiring Pledge recitation, Plaintiffs' assertion that Plaintiff Habecker was recalled from office because of his refusal to recite the Pledge is more availing, at least at first blush.  The first cracks in Plaintiffs' logic radiate from the alleged policy itself.  Plaintiffs have failed to present any evidence establishing that recitation of the Pledge was required at Board meetings.  Plaintiff Habecker's testimony illustrates the problems with Plaintiffs' position:

> Q:   Did [Defendant Mayor] say at that time that everyone was required to recite the [P]ledge?
> A:   No.
>
> Q:   Did he say that anyone was required to recite the [P]ledge?

A:      No.

Q:      Okay.
A:      [Defendant Mayor] asked that we all stand and recite the [P]legde.

* * *

Q:      Did anyone say anything to you about your remaining seated?
A:      That first meeting that I sat [through recital of the Plegde]?

Q:      Yes.
A:      No.

Q:      At that meeting, did anyone tell you that you needed to stand?
A:      No.

Q:      Did anyone tell you that you needed to recite the [P]ledge?
A:      No.

* * *

Q:      In what way do you believe that [recitation of the Pledge] was mandatory?
A:      I had a pretty good idea that if I remained seated, that I could be recalled
        or there would be a public protest.

Q:      But nobody on the Board [] told you that you had to stand and recite the
        pledge, correct?
A:      Of course not.

* * *

Q:      And you also said you believe reciting the [P]ledge was coerced?
A:      Yes.

Q:      Is there a different reason for your belief that it was coerced?
A:      The whole — everything that's happened to me since I sat [and refused to recite
        the Pledge] is coercion.

Q:      And coercion by whom?
A:      By the petitioners, by those that signed the petition, and those that voted against
        me.

-16-

* * *

A:       [T]he election never would have taken place if the petition had never been signed.

For the purposes of their claim, Plaintiffs have conflated their perceptions of the Pledge recital policy with the rationale of the individuals who signed the petition and voted to recall Plaintiff Habecker from office.  This proves problematic to establishing causation of Plaintiff Habecker's alleged injury.  The injury here was caused not by a forced recitation of the Pledge or by penalties imposed for silence (neither of which happened) but by the reaction of, first, the recall Committee Defendants, and then the voters, to Plaintiff Habecker's actions.  While these actions did cause injury, the injury is not one which can be redressed by a declaratory judgment, for reasons to be discussed below.  In light of Plaintiff Habecker's testimony, it is difficult indeed to ascertain how Plaintiffs can fairly trace the injury caused by the recall election to the policy of required Pledge recitation, rather than to the will of the voters, especially given that Plaintiffs have not established that any policy requiring recitation of the Pledge even existed.

Plaintiffs cite landmark First Amendment cases in support of their arguments, but the facts of the instant case do not warrant application thereof.  Plaintiffs place great emphasis on the Supreme Court's holding in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943).  In *Barnette*, the West Virginia State Board of Education adopted a resolution ordering that school pupils "shall be required" to recite the Pledge and "participate in the salute honoring the Nation represented by the Flag; provided, however, that refusal to salute the Flag be regarded as an act of insubordination, and shall be dealt with accordingly."  *Id.* at 626 (citation and internal quotation marks omitted).  The *Barnette* Court held that the government could not subject an

individual to sanctions for refusing to recite the Pledge.  *Id.* at 642.  The instant case is easily distinguished, given that Plaintiffs have not established either: (1) a formal or informal requirement requiring recital of the Pledge; or (2) punishment exacted by the Board for failure to recite the Pledge.

Similarly, Plaintiffs fail in their attempt to demonstrate the applicability of the Supreme Court's decisions in: (1) *Lee*, 505 U.S. at 577, in which the Court held that prayers at public school graduations were coercive and violated the Establishment Clause; and (2) *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), in which the Court held that prayers taking place before sporting events were coercive and violated the Establishment Clause.  Again, the instant case is easily distinguishable.  First, in evaluating alleged Establishment Clause violations, the Supreme Court has applied the coercion test "with great restraint, recognizing it only in the context of children who are more likely to be pressured and negatively impacted." *Newdow*, 383 F.Supp. 2d at 1243.  It is quite clear in the instant case that no children were involved in the recitation of the Pledge by the Board.  Further, *Lee* and *Santa Fe* involved prayers. Those cases have no relevance here, because the Pledge is a patriotic utterance, not a religious one.  In arriving at this conclusion, this court finds the Fourth Circuit's analysis of recitation of the Pledge in public schools in *Myers v. Loudon County Public Schools*, 418 F.3d 395 (4th Cir. 2005), particularly instructive.

In *Myers*, the Fourth Circuit noted that although the Pledge contains a religious phrase — "and it is demeaning to persons of any faith to assert that the words 'under God' contain no religious significance" — the Pledge is ultimately "a statement of loyalty to the flag of the United

States." *Id.* at 407.  The *Meyers* court emphasized that the Pledge is not a prayer, which is "a solemn and humble approach to Divinity in word or thought," communicated "with bowed head, on bended knee." *Id.* at 407–08 (citations and internal quotation marks omitted).  Otherwise stated, the inclusion of words "under God" does not alter the nature of the Pledge as a patriotic activity. *Id.* at 407.  Thus, "even assuming that the recitation of the Pledge contains a risk of indirect coercion, the indirect coercion is not threatening to establish religion, but patriotism." *Id.* at 408.

Additional flaws appear in Plaintiffs' arguments in examining the third and final issue of redressability.  Plaintiffs assert that this court can cure Plaintiff Habecker's injury by declaring the recall election null and void and restoring Plaintiff Habecker to his position on the Board. Importantly, Plaintiffs admit that had Plaintiff Habecker not been recalled from office, his term would have expired in April 2006.  Plaintiffs do not cite a case, statute, or historical precedent giving any court the authority to undue and override the will of voters in selecting a popular representative, as this court would necessarily do by reinstalling an officer recalled by vote and by placing Plaintiff Habecker in office without a vote.  This court finds no source for such authority, and posits that the sweeping judicial authority Plaintiffs envision runs entirely counter to the very nature of American representative democracy.[5]  Based on the foregoing, to the extent Plaintiffs'

---

[5]The court is struck by Plaintiffs' failure to mention the effect that Plaintiff Habecker's reinstallation would have on the voting public or the elected individual who would be removed from office to allow Plaintiff Habecker to reclaim his seat on the Board.

claims arise out of Plaintiff Habecker's recall from office, Plaintiffs do not have standing to

challenge the Pledge on its face or the alleged Board policy requiring recitation of the Pledge.

### *(2)    Mootness*

Intervenor and Town Defendants argue that they are entitled to summary judgment on

Plaintiffs' claims because they are moot.  "A case is moot when the issues presented are no longer

'live' or the parties lack a legally cognizable interest in the outcome."  *Los Angeles County v.*

*Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 [1969]).  It

is well settled that mootness principles apply to claims brought under the Declaratory Judgment

Act.  *Moongate Water Co. v. Dona Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082,

1088 (10th Cir. 2005).  Thus, a plaintiff cannot maintain a declaratory action "unless he or she can

demonstrate a good chance of being likewise injured in the future."  *Facio v. Jones*, 929 F.2d

541, 544 (10th Cir. 1991).  Otherwise, a declaratory judgment could be an improper advisory

opinion.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167,

212–13 (2000) (holding that in order to avoid advisory opinions, a court may not hear a case if

the underlying dispute loses its character as a present, live controversy).  Incidentally, the

Declaratory Judgment Act "enlarged the range of remedies available in the federal courts[,] but

did not extend their jurisdiction."  *Skelly Oil*, 339 U.S. at 671; *accord United Food &*

*Commercial Workers Union, Local 1564 v. Albertson's, Inc.*, 207 F.3d 1193, 1197 (10th Cir.

2000).  Therefore, "if a case is otherwise moot, the existence of a prayer for declaratory relief

does not keep the case alive."  *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248,

1265 (10th Cir. 2004) (citations omitted).

Here, both Intervenor and Town Defendants argue that Plaintiffs' claims no longer reflect a live controversy because Plaintiff Habecker is no longer in office and testified that he does not intend to run for re-election in the next four-year term.  In response, Plaintiffs argue that the case is not moot "merely because the damage [has] been done" and cite the Supreme Court's willingness to decide *Lee*, 505 U.S. at 577, and *Roe v. Wade*, 410 U.S. 113 (1973), despite the fact that offending situations alleged in those cases — an impending graduation and a denied abortion, respectively — no longer affected the parties.  Plaintiffs implicitly argue that the harm in the instant case is one capable of repeating, yet evading review.

Plaintiffs' implicit argument is entirely unconvincing.  Unlike the human gestational period or the average senior year of high school, both of which last approximately nine months, a full term of service on the Board lasts four years.  It is difficult to argue genuinely that four years is not sufficient time to bring suit and pursue the appellate process.  Looking only to the cases upon which Plaintiffs base their contention, three years passed between the filing of the original complaint and the issuance of an order by the Supreme Court in *Roe*, and *Lee* followed a similar time frame.  *See Lee*, 505 U.S. at 577; *Roe*, 410 U.S. at 113; *Roe v. Wade*, 314 F. Supp. 1217 (N.D. Tex. 1970); *Weisman v. Lee*, 728 F. Supp. 68 (D.R.I. 1990).

The correct course of action for this court to take in determining whether declaratory relief is appropriate is to "look beyond the initial controversy which may have existed at one time and decide whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991) (citations, internal quotation marks, and other

punctuation omitted).  Fatally to Plaintiffs' claim, Plaintiff Habecker: (1) is no longer a trustee on

the Board; and (2) testified that he was "probably not" going to run for re-election in the next

four-year term.  Despite Plaintiffs' sophistic observation that Plaintiff Habecker "did not rule []

out" the possibility of running for re-election, the facts in the instant case simply cannot suffice to

create a controversy of true immediacy and reality.  Consequently, to the extent Plaintiffs' claims

arise out of Plaintiff Habecker's recall from office, Plaintiffs' declaratory judgment claims are

moot and not properly before this court.

### ii.   *Alternative Theory of Injury*

Plaintiffs — separately, and in a manner slightly different from their responses to

Intervenor's and Town Defendant's motions — move for summary judgment on their claims for

declaratory relief.  Like their claims in their complaint, Plaintiffs arguments in their motion are

rather ethereal and difficult to repeat precisely or concisely.  Plaintiffs appear to argue or reserve

the possibility of arguing that the Pledge and alleged forced recitation thereof: (1) violated the

Establishment Clause; and (2) injured Plaintiff Habecker by "trapp[ing]" him, and forcing him to

"pay homage to a deity."  Plaintiffs' argument fails.

First, to the extent Plaintiffs argue that their injury consists of their objection or offense to:

(1) inclusion of the phrase "under God" in the Pledge on its face; or (2) to hearing said phrase

during recitation of the Pledge, such purported injury is insufficient to satisfy the Article III

justiciability requirements.  *See Valley Forge Christian Coll. v. Ams. United for Separation of*

*Church & State*, 454 U.S. 464, 485 (1982) (holding "the psychological consequence presumably

produced by observation of conduct with which one disagrees . . . is not an injury sufficient to

confer standing" under Article III).  Further, to the extent Plaintiffs argue that the injury

underlying their claims consists of Plaintiff Habecker himself having to recite the Pledge, this

court has already held that Plaintiffs have not demonstrated that recitation of the Pledge was

required.  Accordingly, to the extent Plaintiffs' claims arise out of Plaintiff Habecker's allegedly

forced recitation of the Pledge, Plaintiffs do not have standing to challenge either the Pledge on its

face or the alleged Board policy of requiring recitation.

Finally, even assuming that Plaintiffs could satisfy the Article III justiciability requirements

as to this aspect of their claim, current Establishment Clause jurisprudence mandates dismissal.

The Supreme Court has considered the Pledge in dicta and has characterized it as "consistent with

the proposition that government may not communicate an endorsement of religious belief."

*County of Allegheny v. ACLU*, 492 U.S. 573, 602–03 (1989); *see also Elk Grove*, 542 U.S. at 34

(O'Connor, J., concurring in the judgment) (rejecting Establishment Clause challenge by

concluding that a reasonable observer "could not conclude that reciting the Pledge, including the

phrase 'under God,' constitutes an instance of worship"); *see Gaylor v. United States*, 74 F.3d

214, 216–17 (10th Cir. 1996) (collecting cases).  As the Tenth Circuit has noted, although the

referenced statements appear in dicta, they nonetheless bind this court "almost as firmly as [] the

Court's outright holdings [do], particularly when the dicta is recent and not enfeebled by other

statements."  *Gaylor*, 74 F.3d at 217.  Further, the Tenth Circuit has come to the same conclusion

as the Supreme Court.[6]  *See id.* (emphasizing Supreme Court dicta holding that the Pledge is not

_____

[6]The court also finds persuasive the Fourth Circuit's holding in *Myers* that Pledge "is not a
religious exercise" and does not pose the harms the establishment clause protects against —

unconstitutional; *Snyder*, 159 F.3d at 1242 n.10 (deeming the Pledge to be a form of "ceremonial deism" that "pass[es] constitutional muster").

Moreover, this court cannot deny the relevance of *Marsh v. Chambers*, 463 U.S. 783 (1983), wherein the Supreme Court held that opening legislative sessions with a prayer uttered by a chaplain paid with public funds did not violate the Establishment Clause.  The *Marsh* Court premised its decision upon the historical significance of legislative prayer, which has occurred since the First Congress drafted the First Amendment.  463 U.S. at 784–95.  The *Marsh* decision has been extended to "other deliberative bodies," because such bodies share the same history of prayer as legislative bodies.  *See Snyder*, 159 F.3d at 1233 (applying *Marsh* to city council meetings); *cf. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 381 (6th Cir. 1999) (holding that school board meetings could not start with prayer because "the school board, unlike other public bodies, is an integral part of the public school system").  Because the Board could open its meetings with prayers led by publicly funded clergy, this court finds it markedly difficult to ascertain how recitation of the Pledge would not be constitutionally permissible.

Plaintiffs argue at length that the instant case can be distinguished from *Marsh*, because in that case, "the legislators in attendance merely sat passively, albeit solemnly, while a clergyman prayed," while Plaintiff Habecker was expected to participate actively in the recitation.  Again, as previously discussed, Plaintiffs have not demonstrated that recitation of the Pledge was required.

---

namely, "sponsorship, financial support, and active involvement of the sovereign in religious activity."  418 F.3d at 408.

Thus, to the extent Plaintiffs' claims arise out of Plaintiff Habecker's alleged forced recitation of the Pledge, Plaintiffs' claims fail.

### iii.    Ancillary Issues

Plaintiffs argue that the alleged forced recitation of the Pledge violated Article VI.  Setting aside the obvious issue — that Plaintiffs have not established recitation of the Pledge was forced or required — the court notes this argument is not contained in Plaintiffs' complaint, and appears for the first time in Plaintiffs' motion for summary judgment.[7]  Pursuant to Federal Rule of Civil Procedure 15, courts may construe new claims raised in a plaintiff's summary judgment briefings as a motion to amend the complaint.  *See* Fed. R. Civ. P. 15 (2006); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998).  Generally, a plaintiff ought not be prohibited from pursuing a valid claim due to his failure to set forth in the complaint a theory upon which he could recover, so long as the "'late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.'"  *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1219 at 194 [2d ed. 1990]).  Indeed, the Tenth Circuit has held that "'the purpose of fact pleading,' as provided by [Federal Rule of Civil Procedure] 8(a)(2), is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed. . . ."  *Id.* at 1091.  Importantly, this pleading standard, albeit

---

[7]Plaintiffs' amended complaint contains only the claims that subjecting Plaintiff Habecker to a recall election for his refusal to recite the Pledge violated Article VI and that the recall election itself violated Article VI.

liberal, does not provide for eleventh-hour changes in strategies, arguments, and theories in cases.

"This practice, if permitted, would waste the parties' resources, as well as judicial resources, on

discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants,

requiring the court to grant further time for discovery or continuances." *Id.*

In keeping with the foregoing, the Tenth Circuit has held that "untimeliness alone is a

sufficient reason to deny leave to amend, especially when the party filing the motion has no

adequate explanation." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations

omitted).  Here, Plaintiffs have already amended their complaint once, and offer no explanation as

to why this court should allow further amendment at this stage in the case.  It is difficult to

ascertain — and Plaintiffs make no argument to aid the court in its endeavor — why Plaintiffs

could not have presented this argument in a more timely manner.  Plaintiffs' implicit motion to

amend is unjustifiably untimely, and is therefore denied.

### b.      *Plaintiff Habecker's Section 1983 Claims*

Plaintiffs and Town Defendants both assert they are entitled to summary judgment on

Plaintiff Habecker's claims under section 1983.[8]  At the outset, the court notes that Plaintiffs' lack

of standing with respect to their declaratory relief does not necessarily affect their standing to

---

[8]Although it is not clear from the complaint or Plaintiffs' briefings, given that between the
Plaintiffs, only Plaintiff Habecker was a member of the Board and subject to a recall election, the
court assumes that only Plaintiff Habecker brings claims under section 1983.

bring claims under section 1983.  *See Facio*, 929 F.2d at 544 (holding a plaintiff who has been

constitutionally injured can bring a section 1983 action to recover damages, but can only maintain

a declaratory action by establishing a likelihood of future injury).  Otherwise stated, "standing to

obtain . . . declaratory relief must be analyzed separately from standing to obtain retrospective

relief."  *Id.*  Section 1983 provides a remedy for constitutional violations committed by state

actors or by private actors under color of state law.  *See* 42 U.S.C. § 1983 (2006).  Specifically,

section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

*Id.*

Here, Plaintiffs assert that Defendants violated section 1983 by subjecting Plaintiff Habecker to a

recall election, which infringed his rights under the under Article VI and the First Amendment.[9]

To establish a violation of section 1983, Plaintiff Habecker must demonstrate that: (1)

Defendants deprived him of a right secured by the Constitution or the laws of the United States;

and (2) Defendants acted under color of state law to deprive him of that right.  *See Am. Mfrs.*

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Plaintiffs argue they have satisfied this

burden.  Town Defendants argue that they are entitled to summary judgment because: (1) the

---

[9]The court underscores that Plaintiffs expressly do not bring a section 1983 claim against
Town Defendants for allegedly forcing him to recite the Pledge.  Evidently, Plaintiffs' claims
directly concerning the recitation of the Pledge relate only to their declaratory judgment claims.

right to be a candidate for state office is not protected by federal law; and (2) Plaintiffs cannot

establish state action.  I need only discuss Town Defendants' arguments regarding state action to

resolve this matter, but in the interest of clarity, I briefly address the protected rights at issue in

this case.

> ### *i.*        *Deprivation of Constitutional Rights*

Plaintiffs assert that by conducting the recall election, Defendants violated Plaintiff

Habecker's rights: (1) to free speech and free exercise of religion under the First Amendment; and

(2) not to be forced to take a religious test for public office under Article VI.  The First

Amendment is applicable to the states through the Fourteenth Amendment, and protects freedom

of speech and free exercise of religion.  U.S. CONST., amend. 1 ("Congress shall make no law . . .

prohibiting the free exercise [of religion]; or abridging the freedom of speech."); *see Gitlow v.*

*New York*, 268 U.S. 652, 666 (1925).  As relevant here, Article VI provides that officers "of the

United States and of the several States, shall be bound by [o]ath or [a]ffirmation, to support this

Constitution; but no religious [t]est shall ever be required as a [q]ualification to any [o]ffice or

public [t]rust under the United States."  U.S. CONST. art. VI, cl. 3.  Plaintiffs correctly note that

whether Article VI applies to the states through the Fourteenth Amendment is an unsettled

question under the law.  Nonetheless, in support of their arguments, Plaintiffs point the court to

the Supreme Court's holdings in *Torcaso v. Watkins*, 367 U.S. 488 (1961).  In *Torcaso*, the

Court held that Maryland's refusal to appoint an individual to the serve in the office of the Notary

Public, based on that individual's refusal to declare his belief in God, was unconstitutional.  *Id.*

Particularly relevant to the instant case, the *Torasco* Court declined to consider whether Article

VII applies to states, and instead based its decision on analysis of the First Amendment.[10]  *Id.* at 489 n.1, 492–96.  Here, this court need not consider the interplay between the Fourteenth Amendment and Article VI, or the effect thereof on Plaintiff Habecker, because Plaintiffs simply cannot establish the requisite state action to maintain their claim in the instant case.

   *ii.*  **State Action**

   Plaintiffs maintain that the "recall election was 'state action'" and the Defendants, including Committee Defendants were "'state actors' within the meaning of [section] 1983." Purportedly in support of this contention, Plaintiffs assert that the voters had no right to recall Plaintiff Habecker, and the recall petition exudes "*animus* directed at [Plaintiff] Habecker only because he exercised a fundamental right of religious freedom."  Plaintiffs assert further that the "recall petition, [] due to its unconstitutionality, should never have been certified by [Defendant Clerk] and allowed to go to a vote in the first place."  Plaintiffs' conflated claims and overlapping, if not conflicting, arguments concerning said conflations complicate this court's analysis.  The only issue for this court's consideration is whether the parties who allegedly violated Plaintiff Habecker's individual rights acted under color of state law.  As the Supreme Court has repeatedly held, there is an "essential dichotomy set forth in [the Fourteenth] Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct, 'however

---

[10]The *Torasco* Court found that Maryland's oath requirement violated the Establishment Clause and right to free exercise of religion guaranteed by the First Amendment.  The Court reasoned that states may not constitutionally force citizens to "profess a belief or disbelief in any religion" and, further, the fact that "a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution." *Torcaso*, 367 U.S. at 495.

discriminatory or wrongful,' against which the Fourteenth Amendment offers no shield." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 [1948]; citing *The Civil Rights Cases*, 109 U.S. 3 [1883]); *see also Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936 (1982) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 [1978]) ("'[M]ost rights secured by the Constitution are protected only against infringement by governments.'").  Affording Plaintiffs' claims liberal construction, as required, the court construes Plaintiffs' argument to mean that both Committee Defendants and Town Defendants acted under color of law to deprive Plaintiff Habecker of his rights — the former by petitioning for a recall election, the latter by allowing the election to take place.

Before further addressing Plaintiffs' arguments, it is necessary to provide some background on the nature of recall elections in Colorado.  Pursuant to Colorado law, "[e]very elected officer of any municipality of the state of Colorado may be recalled from office at any time by the registered electors of the municipality."  Colo. Rev. Stat. § 31–4–501 (2006); *see also id.* § 1–12–101 ("Every elected officer of this state or any political division thereof is subject to recall from office at any time by the eligible electors entitled to vote for a successor to the incumbent.").  To effect a recall, a group of between three and five individuals must form a committee and file a petition "demanding an election of a successor to the officer named in the petition" in the office of the municipal clerk. *Id.* § 31–4–502.  Moreover:

> The petition shall contain a general statement, in not more than two hundred words, of the grounds on which the recall is sought, which statement shall be intended for the information of the electors of the municipality.  Such electors shall be the sole and exclusive judges of the legality, reasonableness, and sufficiency of the grounds assigned for recall, and said grounds shall not be open to review.

*Id.* The petition must be signed by a certain number of registered electors. *Id.* With these general principles in mind, the court turns to Plaintiffs' claims.

### (1)   Committee Defendants as State Actors

Plaintiffs appear to argue that Committee Defendants are state actors within the meaning of section 1983 because they were: (1) designated as a recall committee in keeping with Colorado Revised Statutes section 31–4–502; (2) the "sole authors of the recall ballot;" and (3) "intimately involved in the election process." Plaintiffs' arguments are disingenuous. The state action requirement protects individual freedom by limiting the reach of federal law and federal judicial power. *Lugar*, 457 U.S. at 936. Without it, as the Supreme Court has noted, "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Id.* These holdings apply squarely to the instant case. The fatal flaw in Plaintiffs' claims is the lack of state action.

"What constitutes state action . . . has not been defined with precision," but, generally, analysis thereof "requires the 'sifting [of] facts and weighing [of] circumstances.'" *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1271 (10th Cir. 1989) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 [1965]) (alterations in original). Courts examine two factors in determining whether action is "state action" for the purposes of section 1983: (1) whether the alleged deprivation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible;" and (2) whether the party charged with the deprivation is "a person who may fairly be said to be a state actor" — meaning a state official, an individual who has acted with or has obtained

significant aid from state officials, or an individual whose conduct is otherwise chargeable to the State. *Lugar*, 457 U.S. at 937; *see also Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).

Although the first factor is clearly satisfied here by Committee Defendants' invocation of the Colorado recall election statute, the court finds no circumstances in this case to satisfy the second factor. It is clear that Committee Defendants are not state or municipal officials, Plaintiffs themselves refer to them as "Non-Town Defendants" in order to distinguish them from Town Defendants, who are all municipal officials. As to whether Committee Defendants acted with or received aid from municipal officials, Plaintiffs baldly assert that the recall election "was a public spectacle orchestrated by [Committee Defendants] in conjunction with officials of the Town of Estes Park." Plaintiffs do not offer argument or evidence to substantiate this contention. Such conclusory statements simply cannot serve to support Plaintiffs' motion for summary judgment in any respect. *See Celotex*, 477 U.S. at 325 (holding moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case). Other than Plaintiffs' unsubstantiated allegations, no evidence suggests that Committee Defendants worked with or received aid from Town Defendants, or ought otherwise be considered state actors.

As private citizens, Committee Defendants' decision to petition Plaintiff Habecker's recall from office was quite patently private action. The fact that Committee Defendants designated themselves as a recall committee, as required by Colorado law, does not convert the act of

petitioning a recall into state action.[11]  *See Lugar*, 457 U.S. at 951 (holding a private party's mere invocation of state legal procedures does not satisfy section 1983 state action requirement). Plaintiffs' argument that Committee Defendants were "intimately involved" with the petition election is potentially more competent, but its lack of specificity and substantiation by record evidence render it wholly unavailing.  This court recognizes that requesting a recall election might be considered "intimate" involvement by certain parties, but such intimacy does not necessarily state action make.  Based on the foregoing consideration of the relevant factors, this court finds no reason to deem Committee Defendants state actors.  Therefore, Plaintiffs' section 1983 claims against them must fail.

### (2)   *Town Defendants as State Actors*

To the extent Plaintiffs argue that Defendant Clerk and the other Town Defendants are state actors, the argument warrants careful analysis.  Plaintiffs evidently understand that this case places voters' rights of democratic representation and Plaintiff Habecker's rights to free speech and free religious exercise on a balance, with the election officials — here, Town Defendants, especially Defendant Clerk — at the fulcrum.  Plaintiffs assert, albeit paradoxically, that "[i]t is not the voters whose rights are being challenged here, even though the voters had no right to repeal [Plaintiff] Habecker's basic constitutional protections."  Plaintiffs assert further that the

_____

[11]In relevant part, Colorado Revised Statutes section 31–4–502(1)(a)(I) states "[e]ach petition shall designate by name and address not less than three nor more than five persons, referred to in this section as the 'committee,' who shall represent the signers thereof in all matters affecting the same."  Colo. Rev. Stat. § 31–4–502(1)(a)(I) (2006).  The court underscores that pursuant to the statute, the petitioning "committee" expressly represents the interests of the individuals who sign of the petition, not the governmental entity conducting the election.

crux of their claims is "the disgraceful recall petition, which due to its unconstitutionality, should

never have been certified by [Defendant Clerk] and allowed to go to a vote in the first place." I

disagree with Plaintiffs on both points.

First, contrary to Plaintiffs' position, the voters in the recall election in this case were

entitled to vote for or against Plaintiff Habecker on whatever basis they may have chosen. As

discussed at length above, because the voters are private actors, neither this nor any court may

turn to the Constitution to exact judgment or impose limitations upon the voters' decisions or

rationales therefor through section 1983.[12]  Quite to the contrary, the Constitution fiercely

protects voters' rights to choose freely. "Voting is one of the most fundamental and cherished

liberties in our democratic system of government." *Burson v. Freeman*, 504 U.S. 191, 214

(1992) (Kennedy, J., concurring). The significance that our society and laws grant to voting is

not limited to general elections. As the Supreme Court has held, and as the Ninth Circuit

underscored in a decision concerning the recent precedent-setting gubernatorial recall election in

California, "'[t]he right to vote freely for the candidate of one's choice is of the essence of a

democratic society, and any restrictions on that right strike at the heart of representative

government.'" *S.W. Voter Registration Educ. Project v. Shelley*, 344 F.3d 882, 892 (9th Cir.

2003) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 [1964]). Moreover,

> the power of recall . . . is a fundamental right of citizens within a representative
> democracy. Neither the legislature nor local lawmaking bodies may infringe
> constitutionally protected fundamental rights. Reservation of the power of recall

---

[12]There can be no genuine question in this case that the voters are private actors. The
parties have not attempted to argue otherwise.

in the people must be liberally construed in favor of the ability to exercise it; conversely, limitations on the power of recall must be strictly construed.

*Shroyer v. Sokol*, 550 P.2d 309, 310–11 (Colo. 1976) (citations omitted).

The court recognizes Plaintiff Habecker's constitutional rights to free expression and free exercise of religion, but underscores that Plaintiff Habecker has no *right* to serve as a representative to individuals who are of a different mindset.[13] Otherwise stated, serving on the Board in this case was Plaintiff Habecker's privilege — a privilege the voters were free to revoke. The fundamental flaw in Plaintiffs' argument is their attempt to transfer the will and actions of private individuals to Town Defendants.  The actions of the private individual voters are beyond the reach of the Fourteenth Amendment, and thus beyond redress by this court.  For the same reasons this court cannot adjudge as unconstitutional Committee Defendants' choices and actions in creating the recall petition, this court cannot thus adjudge the private choices and actions of the voters in ratifying the petition.  In turn, because this court cannot and does not find the recall petition unconstitutional, the court cannot and does not find the Town Defendants' actions in granting the petition and conducting the recall election unconstitutional.  Had the Town Defendants initiated or forced Plaintiff Habecker's ouster from the Board, the outcome of this case might be different.  Given the case at bar, this court can envision no manner in which the act

---

[13]Contrary to Plaintiffs' contentions, Committee Defendants evidently recognized Plaintiff Habecker's First Amendment rights as well.  The petition states the reason for recall is not Plaintiff Habecker's religious beliefs or expression through his refusal to recite the Pledge, but his failure to announce his convictions before being elected onto the Board. Committee Defendants expressly "respect [Plaintiff] Habecker's right to free speech under the Constitution of the United States."

of ratifying a constitutionally sound petition for a recall election could be deemed a violation of Plaintiff Habecker's rights.

Finally, Plaintiffs objurgate Town Defendants' failure to stop the recall election from taking place, and argue Town Defendants had "a duty to act in defense of the Constitution," because Plaintiff Habecker was "pilloried for exercising his First Amendment rights." Under Plaintiffs' logic, the public at large would have no right to recall an elected official based on the official's speech or expression — an untenable notion in a representative democracy. *See Hazelwood v. Saul*, 612 P.2d 499, 500 (Colo. 1980) (holding "the right of recall is a fundamental right of the people"). Based on the foregoing, Defendants are entitled to summary judgment on Plaintiffs' section 1983 claims.

      ***c.     Plaintiffs' State Law Claims***

Town Defendants assert they are entitled to summary judgment on Plaintiffs' remaining claims. Plaintiffs argue that: (1) Colorado Revised Statutes section 31–4–501 is "unconstitutional to the extent that it indiscriminately provides for recall of a public official even when the only ground for said recall is a constitutionally-protected activity on the part of the elected official;" (2) the Town Defendants abused their discretion and violated Colorado Revised Statutes section 31–4–503 by allowing the recall election to take place; and (3) the recall election violated Plaintiff Habecker's right to religious freedom under Article II of the Colorado Constitution. In redress, Plaintiffs seek declaratory judgments that: (1) Article XXI of the Colorado Constitution and Colorado Revised Statutes section 31–4–105 violate the United States Constitution; and (2) the recall election was unlawful and violative of Article II of the Colorado Constitution. Town

Defendants assert that they are entitled to summary judgment on: (1) Plaintiffs' claims regarding the constitutionality of Colorado laws; and (2) Plaintiffs' other remaining claims, because they depend upon Plaintiffs' prevailing on their constitutional claims.  I need only address Town Defendants' first argument.

Plaintiffs seek a declaratory judgment that "Article XXI of the Colorado Constitution and [s]ection 31–4–105 [] of the Colorado Revised Statutes violate the United States Constitution to the extent that they prohibit any judicial review of the ground or grounds for recall."[14]  Town Defendants assert they are entitled to summary judgment on Plaintiffs' claims because Plaintiffs: (1) failed to exhaust their administrative remedies; and (2) cannot establish that the laws are unconstitutional.  Plaintiffs do not directly respond to Town Defendants' arguments.  Instead, Plaintiffs cite the wholly inapposite *Romer v. Evans*, 517 U.S. 620 (1996) and argue in *non*

---

[14]Although Plaintiffs seek a declaratory judgment on the subject, Plaintiffs' only mention of Article XXI of the Colorado Constitution appears in their prayer for relief cited above.  Section one of Article XXI provides that "[e]very elective public officer of the state of Colorado may be recalled from office at any time by the registered electors entitled to vote for a successor," and sets forth the required procedures to petition and effect an election.  Colo. Const. art. XXI, § 1. The section provides further that "the registered electors shall be the sole and exclusive judges of the legality, reasonableness and sufficiency of such ground or grounds assigned for such recall, and said ground or grounds shall not be open to review."  *Id.*

*sequitur* that a public vote may not "cancel a citizen's right to religious freedom."[15]  Plaintiffs' arguments are too vague to survive Town Defendants' motion.

Courts subscribe to a rebuttable presumption that statutes are constitutional.  *Wash. County Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 149 (Colo. 2005) (citing *Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 440 [Colo. 2000]). This presumption reflects the accepted premise that legislative and executive branches of government validly observe and effectuate constitutional provisions in exercising their powers. *Id.* Moreover, the presumption reflects the long-standing and sound principle that courts "do not lightly declare a statute unconstitutional." *Higgs v. Western Landscaping & Sprinkler Sys., Inc.*, 804 P.2d 161, 165 (Colo. 1991).  Indeed, "[t]o declare an act of the legislature unconstitutional is always a delicate duty, and one which courts do not feel authorized to perform, unless the conflict between the law and the [C]onstitution is clear and unmistakable." *People v. Goddard*, 7 P. 301, 304 (Colo. 1885).  A party challenging the constitutionality of a statute carries a heavy burden, and "ordinarily must prove the statute's unconstitutionality 'beyond a reasonable doubt.'" *Greenwood Vill.*, 3 P.3d at 440 (citations and internal quotation marks omitted); *see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (holding parties bear a heavy burden

---

[15]In *Romer*, the Supreme Court enjoined enforcement of an amendment to the Colorado Constitution that prohibited government from enacting any legislation aimed at protecting homosexual individuals.  517 U.S. at 635.  Plaintiff argues, somewhat cryptically, that *Romer* "stands for the proposition that voters do not have free reign to repeal constitutional protections notwithstanding their right to vote and to petition for redress of grievances under the First Amendment."  Independent of its merit, this court cannot ascertain how Plaintiffs' interpretation of *Romer* relates to or supports Plaintiffs' claim that certain Colorado laws are unconstitutional.

to demonstrate the invalidity of the laws they challenge); *Faustin*, 268 F.3d at 948 (same).  Here, Plaintiffs have not so much as specified which Article or Amendment of the Constitution the laws purportedly offend, let alone supported their claims with evidence to establish a clear and unmistakable conflict between the laws and the Constitution.  Consequently, Town Defendants are entitled to summary judgment as to this claim.

Plaintiffs' remaining claims pertain to alleged violations of Colorado law and determinations of constitutionality under the Colorado Constitution.  This court has jurisdiction over Plaintiffs' federal law claims under federal question jurisdiction pursuant to 28 U.S.C. § 1331 (2006).[16]  The record before the court clearly establishes that the parties are not diverse.  Thus, the only basis for this court's jurisdiction over Plaintiffs' state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) (2006).  I have dismissed Plaintiffs' federal law claims, which provided the sole basis for this court's original jurisdiction.  I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss them without prejudice to refiling in state court.  *See* 28 U.S.C. § 1367(c)(3) (2006) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

---

[16]"In the absence of any pleading that invokes diversity jurisdiction, the relevant basis is federal question jurisdiction under 28 U.S.C. [section] 1331." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996).  Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (2006).

726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").

**3.**      *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.      Plaintiffs' motion for summary judgment (# 62) is DENIED.

2.      Intervenor's motion for summary judgment (# 87) is GRANTED.

3.      Defendants' motion for summary judgment (# 88) is GRANTED.  Plaintiffs' federal claims are dismissed with prejudice.  Plaintiffs' state law claims are dismissed without prejudice to refiling in state court.

4.      The clerk shall forthwith enter judgment in favor of all Defendants and Intervenor and against Plaintiffs, dismissing Plaintiffs' federal claims with prejudice and Plaintiffs' state claims without prejudice.  Defendants and Intervenor may have their costs by filing a bill of costs within eleven days of the date of this order.

Dated this 25th day of September, 2006

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge